Nick DiGIUSEPPE d/b/a Southbrook
Development Co. and Frisco
Master Plan, Petitioners,

v.

Roger LAWLER, Respondent.

No. 04–0641.

Supreme Court of Texas.

Argued Oct. 20, 2005.

Decided Oct. 17, 2008.

Rehearing Denied Dec. 19, 2008.

Craig T. Enoch, Melissa Prentice Lorber, Winstead PC, Austin, James Robert Krause, Lawrence J. Friedman, Jeffrey Thomas Hall, Friedman & Feiger, L.L.P., Dallas, TX, for Petitioner.

Hilaree A. Casada, Hermes Sargent Bates, L.L.P., Julia F. Pendery, Attorney At Law, David W. Shuford, Law Office of David W. Shuford, Daon M. Ward, Godwin Pappas Langley Ronquillo, LLP, Dallas, TX, for Respondent.

Douglas Laycock, University of Michigan Law School, Ann Arbor, MI, for Amicus Curiae.

Justice WALDROP [1] delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, and Justice WILLETT joined.

This case involves a claim for specific performance of a real estate purchase contract. After a trial in which the jury found that the seller breached the contract, the trial court rendered judgment in favor of the buyer and ordered specific performance. The court of appeals reversed on the basis that the buyer did not obtain a finding of fact or prove that he was ready, willing, and able to perform. The court of appeals also concluded that the buyer had waived an alternative claim for refund of his earnest money by failing to file a notice of appeal as to that alternative basis for relief. We affirm the judgment of the court of appeals with respect to the claim for specific performance, reverse with respect to the finding of waiver on the alternative claim for refund of earnest money, and remand the case to the trial court for further proceedings.

## I. Factual and Procedural Background

In October 1998, Nick DiGiuseppe d/b/a Southbrook Development Co. entered into a contract with Richard Lawler to purchase approximately 756 acres of Lawler's land near Frisco, Texas, for $40,000 an acre.[2] The contract made closing of the

---

1. Hon. G. Alan Waldrop, Justice, Court of Appeals for the Third District of Texas at Austin, sitting for Justice Medina by commission of Hon. Rick Perry, Governor of Texas, pursuant to Section 22.005 of the Texas Government Code.

2. The parties contemplated a final purchase price of approximately $28 million. The written contract was initially prepared by DiGiuseppe. The signed version included a typewritten main body with a few handwritten deletions and interlineations initialed by the

purchase contingent on obtaining acceptable rezoning of the property from the City of Frisco to accommodate DiGiuseppe's development plans, and provided that closing that would occur on the fifteenth day after successful completion of rezoning. The purchase contract also provided for a three-stage deposit of earnest money with the title company: (1) $100,000 upon the signing of the contract; (2) $100,000 upon the submission to the City of Frisco of the application to rezone the property; and (3) $400,000 upon "approval by the planning and zoning commission of the City of Frisco of zoning acceptable to Purchaser of the 'Land' as applied for." DiGiuseppe made the first two earnest money deposits. However, a dispute arose as to whether the events that would trigger the requirement for the third deposit had occurred.

In late November 1999, after numerous meetings and a number of revisions to the rezoning application, the Planning and Zoning Commission approved new zoning for the property at issue. This new zoning was approved by the City Council on January 4, 2000. Although the new zoning differed from the zoning that the parties had applied for in their original application, it was acceptable to DiGiuseppe.

On January 12, 2000, Lawler faxed a letter to DiGiuseppe notifying him that Lawler considered DiGiuseppe in default of the purchase contract for failing to make the third earnest money deposit. Lawler took the position that the requirement for the third ($400,000) earnest money deposit had been triggered when the Planning and Zoning Commission had

approved zoning that DiGiuseppe found acceptable. The January 12 letter also declared the contract "cancelled" and demanded release of the earnest money on deposit to Lawler. DiGiuseppe objected to Lawler's notification that the contract was terminated, taking the position that the third earnest money installment had not been triggered because the new zoning was not approved "as applied for." He also declared that he was moving forward with the transaction and demanded that Lawler continue to move toward closing.

Acting on the belief that the contract with DiGiuseppe was terminated, Lawler signed a new purchase contract for the property with DRHI, Inc.—the parent company of DR Horton—on February 1, 2000. DiGiuseppe, acting on the belief that the contract was not terminated, proceeded with finalizing his side of the transaction and demanded that Lawler close. The transaction did not close. Both parties alleged the other was responsible for the failure to close. DiGiuseppe then filed the purchase contract in the deed records.[3] On April 14, 2000, Lawler filed suit against DiGiuseppe in Collin County District Court seeking a declaration that the purchase contract was terminated, requesting damages for breach of contract, and also seeking to quiet title as a result of the filing of the purchase contract in the deed records. DiGiuseppe counterclaimed for breach of contract, quantum meruit, breach of a duty of good faith and fair dealing, statutory fraud, promissory estop-

parties, a typewritten addendum with additional handwritten deletions and interlineations, and a two-page, handwritten addition to the addendum relating to earnest money. The contract also included an August 1999 amendment as well as exhibits describing the property and the development plans.

3. Lawler also did not close with DRHI. The failure of that transaction was the subject of separate litigation.

pel, and specific performance.[4]

The purchase contract limited the remedies available to the parties in the event of a breach. In the event DiGiuseppe failed to close, Lawler's "sole and exclusive" remedy was to retain the earnest money as liquidated damages, and he expressly waived any right to claim any other damages or specific performance from DiGiuseppe. In the event Lawler defaulted in performing his obligations under the contract for any reason other than DiGiuseppe's default or a proper termination of the contract under its provisions, DiGiuseppe could choose between two remedies: (1) terminate the contract and receive a full and immediate refund of the earnest money, or (2) "seek to enforce" specific performance of the contract. DiGiuseppe also expressly waived any right to claim damages.

The case was ultimately tried to a jury and the parties' breach of contract claims were submitted on broad-form questions inquiring as to whether either party failed to comply with the contract. The jury answered favorably to DiGiuseppe that Lawler had failed to comply with the contract and that DiGiuseppe had not failed to comply. A damages question was also submitted and the jury found that DiGiuseppe had suffered $295,696.93 in damages.[5] Although disputed at trial, no question was requested by either party or submitted to the jury with respect to specific performance or whether DiGiuseppe was ready, willing, and able to perform under the contract at the time he alleged the transaction should have closed.

On DiGiuseppe's post-verdict motion, the trial court rendered a take-nothing judgment against Lawler and granted DiGiuseppe specific performance of the purchase contract together with an award of attorneys' fees in the amount of $75,000. The trial court also appointed a receiver to take possession of the property and effectuate a closing of the purchase contract in accordance with its terms.

The court of appeals reversed the trial court's order granting specific performance, holding that DiGiuseppe had failed to conclusively establish, or to request and obtain a finding of fact on, an essential element of his claim for specific performance—that he was ready, willing, and able to perform under the terms of the purchase contract. *Lawler v. DiGiuseppe,* 2004 WL 1209569 (Tex.App.-Dallas 2004) (mem.op.). The court of appeals also held that the omitted fact finding on specific performance was not necessarily referable to a submitted theory and declined to imply a finding that DiGiuseppe was ready, willing, and able to perform. The court of appeals upheld the award of attorneys' fees, however, on the theory that Lawler

---

**4.** After the dispute arose, but before he counterclaimed in the lawsuit, DiGiuseppe transferred his interest in the purchase contract to a Texas limited partnership called Frisco Master Plan LP. The parties do not dispute the validity of the assignment to Frisco Master Plan LP or that Frisco Master Plan is controlled by DiGiuseppe. Therefore, for simplicity, we refer to DiGiuseppe, Southbrook Development, and Frisco Master Plan LP collectively as "DiGiuseppe."

**5.** The jury charge consisted of eight questions, none of which dealt with fact issues related to specific performance. In addition to the two questions on breach of the contract, Question 3 inquired as to damages for Lawler's failure to comply with the contract. Question 4 was a waiver question as to Lawler's claims (unanswered). Question 5 was the liability question on DiGiuseppe's promissory estoppel claim. Question 6 inquired as to damages relating to the promissory estoppel claim. Question 7 inquired whether DiGiuseppe performed compensable work for Lawler. Question 8 inquired as to the value of any compensable work performed by DiGiuseppe (also unanswered).

had pursued a Declaratory Judgment Act claim, and that statute allows the trial court to award fees as are just and equitable.[6] The court of appeals declined to render judgment for the $295,696.93 in damages found by the jury on the basis that there was no evidence to support the finding.[7] The court also declined to award DiGiuseppe any portion of the $200,000 in earnest money that he had deposited on the basis that he had waived this claim by not filing a notice of appeal on that issue.

DiGiuseppe sought review in this Court on two grounds: (1) the purchase contract provided for the remedy of specific performance in the event of a breach by Lawler regardless of whether DiGiuseppe obtained a finding of fact that he was ready, willing, and able to perform; and, (2) in the alternative, if he is not entitled to specific performance, the court of appeals erred in failing either to award the damages found by the jury or to allow DiGiuseppe to recover the $200,000 in earnest money he paid. In his briefing on the merits, DiGiuseppe included a related point that he had also argued in the court of appeals: that a finding relating to the omitted jury question on his being ready, willing, and able to perform should be deemed found pursuant to Texas Rule of Civil Procedure 279 as an omitted element "necessarily referable" to a theory submitted without objection. After considering briefing on the merits, this Court initially declined review. 48 TEX. SUP. CT. J. 440 (Mar. 14, 2005).

DiGiuseppe then filed a motion for rehearing stressing that the purchase contract gave him the option to obtain at least one of two potential remedies in the event of a breach by Lawler—either seeking to enforce specific performance *or* terminating the contract and receiving a refund of the earnest money deposited. DiGiuseppe adamantly contended on rehearing that, even if this Court declined to review the court of appeals judgment with respect to specific performance, the Court should grant relief with respect to the $200,000 in earnest money paid to Lawler because the jury had found that Lawler breached the contract and DiGiuseppe did not. Having obtained a favorable judgment as to specific performance in the trial court, DiGiuseppe argues he was not obligated to file a notice of appeal in the court of appeals to preserve the option of pursuing a refund of his earnest money in the event an appellate court reversed the trial court's award of specific performance. We granted the motion for rehearing and the petition for review. 48 TEX. SUP.CT. J. 878 (June 17, 2005).

## II. Specific Performance

■ An essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract. In 1938, we stated: " 'The doctrine is fundamental that a party seeking the remedy of specific performance ... must show himself to have been ready, desirous, prompt, and eager.' These principles have been long recognized and respected by the Courts of Texas." *Ratcliffe v. Mahres,* 122 S.W.2d 718, 721–22 (Tex.Civ.App.-El Paso 1938, writ ref'd) (quoting 4 JOHN NORTON POMEROY, JR., A TREATISE ON EQUITY JURISPRUDENCE § 1408, at 2779 (3d ed.1905)); *see also DeCordova v. Smith's Adm'x,* 9 Tex. 129, 146 (1852); *cf. Gober v. Hart,* 36 Tex. 139, 140 (1871–1872). We reaffirmed

---

6. Lawler has not challenged this ruling.

7. The court did not address the purchase contract language whereby each of the parties expressly waived any claims for damages.

the rule in *Corzelius v. Oliver*, 148 Tex. 76, 220 S.W.2d 632, 635 (1949) (notwithstanding defendant's refusal to perform her obligations under contract, plaintiff was required to show that he could have performed his contractual obligations to obtain specific performance), and it has been followed by other courts of appeals in reported decisions in addition to the court of appeals in this case. *17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 257–59 (Tex.App.-Dallas 2002, pet. denied); *Chessher v. McNabb*, 619 S.W.2d 420, 421 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920–21 (Tex.Civ. App.-Amarillo 1972, no writ). "[T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement. The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter." 25 RICHARD A. LORD, WILLISTON ON CONTRACTS § 67:15, at 236–37 (4th ed.2002) (citations omitted).

■ It is also a general rule of equity jurisprudence in Texas that a party must show that he has complied with his obligations under the contract to be entitled to specific performance. *Glass v. Anderson*, 596 S.W.2d 507, 513 (Tex.1980) ("A party who asks a court of equity to compel specific performance of a contract must show his own compliance with the contract."); *Bell v. Rudd*, 144 Tex. 491, 191 S.W.2d 841, 844 (1946); *see also Wilson v. Klein*, 715 S.W.2d 814, 822 (Tex.App.-Austin 1986, writ ref'd n.r.e.) ("Generally speaking, it is a prerequisite to the equitable remedy of specific performance that the buyer of land shall have made an actual tender of the purchase price ... [unless] actual tender would have been a *useless*

*act ...."* (citation omitted)). As a consequence, a plaintiff seeking specific performance, as a general rule, must actually tender performance as a prerequisite to obtaining specific performance. *McMillan v. Smith*, 363 S.W.2d 437, 442–43 (Tex. 1962).

■ A corollary to this rule is that when a defendant refuses to perform or repudiates a contract, the plaintiff may be excused from actually tendering his or her performance to the repudiating party before filing suit for specific performance. In such a circumstance, a plaintiff seeking specific performance is excused from tendering performance pre-suit and may simply plead that performance would have been tendered but for the defendant's breach or repudiation. *Id.; Corzelius v. Oliver*, 220 S.W.2d at 632, 634; *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141, 143–44 (1947). This exception to the general rule—that actual tender of performance is a prerequisite to obtaining specific performance—is grounded in the notion that actual pre-suit tender of performance should be excused when it would be a *"useless act,* an *idle ceremony,* or *wholly nugatory."* *Wilson*, 715 S.W.2d at 822 (*citing POMEROY, supra*). This Court acknowledged this reasoning in *Burford:* "[I]t appears to be quite well settled that a formal tender is excused where a tender would be a useless and idle ceremony; and that a tender is also excused where defendant repudiates the contract...." 199 S.W.2d at 145 (citation and internal quotation marks omitted); *see also Regester v. Lang*, 49 S.W.2d 715, 717 (Tex. Comm'n App.1932, holding approved) (holding that tender of performance before bringing suit is not required when it would be a "vain and useless thing" given defendant's open repudiation of the contract).

■ The concept of excusing pre-suit tender of performance when such tender

would be useless or futile has been recognized in Texas equity jurisprudence for over one hundred years. *Ward v. Worsham*, 78 Tex. 180, 14 S.W. 453, 453 (1890) (excusing actual tender of payment by a settler with a right to purchase school land when land at issue had already been sold to a third party and the lawsuit was a suit by the third party for possession of the land). However, even when pre-suit tender of performance is excused, a plaintiff is still obligated to plead and prove his readiness, willingness, and ability to perform at relevant times before specific performance may be awarded. *Corzelius*, 220 S.W.2d at 635; *Burford*, 199 S.W.2d at 144; *17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 256 (Tex.App.-Dallas 2002, pet. denied); *Chessher v. McNabb*, 619 S.W.2d 420, 421 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex.Civ.App.-Amarillo 1972, no writ). The rule relating to excusing pre-suit tender of performance together with its corollary that a plaintiff must plead and prove readiness, willingness, and ability to timely perform before specific performance may be awarded was succinctly stated in *Hendershot v. Amarillo National Bank:* "One of the essential equitable elements in obtaining a decree of specific performance is that the party seeking the decree must plead and prove that he is ready, willing and able to perform, even though a tender of the purchase price may be excused." 476 S.W.2d at 920 (citing *Corzelius*, 220 S.W.2d at 635; *Burford*, 199 S.W.2d at 143–44). As one treatise explains, "[a]lthough a repudiation [by the defendant] usually will excuse the plaintiff from actually tendering performance, courts require that the plaintiff demonstrate his own readiness, willingness, and ability to perform on the date set by the contract before ordering the defendant to perform." EDWARD YORIO, CONTRACT ENFORCEMENT: SPECIFIC PERFORMANCE AND INJUNCTIONS § 6.4, at 144–45 (1989) (citation omitted).

In this case, the only questions submitted to the jury relating to the breach of the purchase contract were:

(1) Did Lawler fail to comply with the contract?

(2) Did Di[G]iuseppe fail to comply with the contract?

The jury answered "Yes" as to Lawler and "No" as to DiGiuseppe. Neither party requested a question as to whether DiGiuseppe was ready, willing, and able to perform at the relevant time. Nor did either party object to the omission of such a question. Consequently, there is no finding of fact in this case or objection to a lack of a finding of fact with respect an essential element of specific performance—that DiGiuseppe was ready, willing, and able to perform at relevant times. Notably, the evidence on DiGiuseppe's readiness and ability to perform—all from the testimony of DiGiuseppe—was equivocal and conflicting. DiGiuseppe testified that he did not have the funds to close at the time originally specified by the purchase contract, or any written commitments from third parties to fund the closing at that time, and that he could not close.[8] He later testified that he "had the

---

8. The following exchange occurred during examination by Lawler's counsel:

Q. Mr. DiGiuseppe, you personally did not have the money to close this contract, did you?
A. I did not.

Q. When you assigned—when you entered into this contract, you had a right to assign it, right?
A. That's right.
Q. And so you were going to have to find a third party or parties to assign this contract in order for it to close, correct?
A. That's exactly what [Lawler] was saying.

means to close the contract." [9]

When contested fact issues must be resolved before a court can determine the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury resolve the disputed fact issues. *See State v. Tex. Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979) (holding that litigant has a right to have ultimate issues of fact submitted to a jury in an equitable action); see also *Hollywood Park Humane Soc'y v. Town of Hollywood Park,* 261 S.W.3d 135, 139 (Tex.App.-San Antonio 2008, no pet.) ("[W]e recognize that the right to a jury trial extends to material, disputed issues of fact in equitable proceedings."); *Casa El Sol–Acapulco, S.A. v. Fontenot,* 919 S.W.2d 709, 715–16 (Tex.App.-Houston [14th Dist.] 1996, writ dism'd by agr.); *see also* WILLISTON ON CONTRACTS, *supra,* § 67:15, at 237 ("A trial court's finding in a specific performance action regarding a purchaser's financial inability to purchase involves a factual issue."). Lawler did not concede or stipulate in the trial court that DiGiuseppe was ready, willing, and able to perform. The issue was disputed and it was an issue on which DiGiuseppe—as the party seeking specific performance—had the burden of proof. *Corzelius v. Oliver,* 148 Tex. 76, 220 S.W.2d 632, 634 (1949); *17090 Parkway, Ltd. v. McDavid,* 80 S.W.3d 252, 256 (Tex.App.-Dallas 2002, pet. denied); *Hendershot v. Amarillo Nat'l Bank,* 476 S.W.2d 919, 920 (Tex.Civ.App.-Amarillo 1972, no writ).

DiGiuseppe does not raise an issue with respect to the state of the applicable law, but contends that the parties' contract alters the manner in which the law applies to this case. He concedes that he did not request a finding by the jury on the issue of whether he was ready, willing,

Q. I'm just asking you. That's what had to happen, isn't it?
A. Yes.
Q. You couldn't close the contract?
A. No.
Q. How did you intend for [Lawler], then, to close this contract?
A. For [Lawler]—
Q. For you to close the contract, for you to make the purchase or for somebody to make the purchase of this contract?
A. Well, normally what I do is—dealing with a piece of property like this, I'll put it under contract, do the work, do the zoning. And through that process, I usually put together parties to be the investors in the deal. And they, then, close on the contract, and they would fund the development of the property and so on. And I would be the development arm of that entity usually.
Q. You never had any written agreement from any third parties to close this contract, did you?
A. I haven't gotten a written agreement with the parties that were going to close it with me, no. That's not the way I do business.
Q. You don't use contracts?
A. No. What I mean is if somebody tells me they are going to do something, I expect them to do it.

Q. Well, in your deposition, didn't you tell me that you felt that there would be three different home builders that might participate and provide that money to close this deal?
* * *
A. Three different home builders were going to close the deal with me, yes.
Q. But you didn't have any written agreement from them that they were going to close the deal?
A. Not a written agreement, no.
* * *
Q. When you sent the letter that said you were ready, willing and able to close this contract, you, individually, couldn't close that contract, could you?
A. I, individually, never intended to close that contract.
Q. You didn't have the funds to close the contract, did you?
A. Not personally, no.

9. The following exchange occurred during examination by DiGiuseppe's counsel:

Q. Mr. DiGiuseppe, you had the means to close the contract, didn't you?
A. Yes. In fact, a month later, we closed one that was $24 million.

and able to perform under the terms of the purchase contract. He complains that the court of appeals misinterpreted and misapplied the remedy provisions of the purchase contract. He argues that, because the parties had agreed in the purchase contract that one of his available remedies would be to seek to enforce specific performance, he had a right to specific performance in the event Lawler breached or defaulted on the contract without the need for any further proof. According to DiGiuseppe, the only *material* disputed fact issue—by virtue of the language of the remedy provision in the contract—is whether Lawler failed to comply with the contract. Consequently, the finding by the jury against Lawler on this point is sufficient, DiGiuseppe contends, to trigger his right to specific performance regardless of whether he had shown that he was ready, willing, and able to perform. DiGiuseppe's basic contention is that the remedy provisions of the purchase contract negate or waive the requirement under Texas law that he prove his readiness, willingness, and ability to perform as a condition to obtaining specific performance.[10]

Lawler responds that specific performance was not automatic under the purchase contract in the event he defaulted. He asserts that the purchase contract's reference to DiGiuseppe having the right to "seek to enforce" specific performance does not equate to a right to automatically receive specific performance. Rather, he argues, the remedy provision is no more than a contractual acknowledgment between the parties that specific performance would be an available remedy for DiGiuseppe in the event of a default by Lawler, and it did not eliminate or waive the requirement that DiGiuseppe demonstrate that he is entitled to specific performance under the law. Lawler contends that the "may ... seek to enforce" language expresses the parties' intent that specific performance would be an available remedy in the event of breach—as distinct from an action for damages, recission, or other remedy—*if* DiGiuseppe can show that he meets the requirements for the grant of specific performance.

We agree with Lawler and the court of appeals that the remedy provision at issue here does not entitle DiGiuseppe to obtain specific performance merely upon a showing of a breach or default by Lawler. The provision at issue limits the available remedies to either (1) terminating the contract and receiving a refund of earnest money, or (2) seeking to enforce specific performance. It does not in any way alter the requirements for obtaining specific performance in the event DiGiuseppe decides

---

**10.** We note that DiGiuseppe's argument on this point is not that the law does not normally require proof of readiness, willingness, and ability to perform before specific performance will be awarded, but that his contract with Lawler negated or waived this requirement by agreement. The dissent argues that DiGiuseppe was not required to prove and obtain a finding of fact that he was ready, willing, and able to perform because Texas law does not require such proof where the defendant has repudiated or breached the contract. However, this argument was not raised or briefed because it is not the position DiGiuseppe takes in the case. Ordinarily, failure to brief an argument waives the claimed error. *Fed.* *Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 410 (Tex.1997). This rule is relaxed when fact issues are not germane to the resolution of the issue and the issue is a question of law involving constitutional ramifications. *Id.* The rule may also be relaxed where the issue is one involving fundamental error. *W.J. McCauley v. Consol. Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957) ("[T]he Supreme Court is authorized to and will consider fundamental error even though not assigned by the parties."). The dissent's argument is not of constitutional dimension, and, even if we agreed with this analysis, we would not view it as raising a point of fundamental error.

to seek such a remedy. The provision states only that DiGiuseppe "may, at [his] option, ... seek to enforce specific performance of [the] Contract." This language does not speak to altering the legal requirements for obtaining specific performance. Nor does it purport to make obtaining specific performance automatic in the event of a default or breach by Lawler.

To the contrary, the provision plainly grants DiGiuseppe only the right to "seek to enforce" specific performance, leaving open the possibility that he may seek to enforce it, but be unable to do so. The unambiguous language of the provision makes two remedies available to DiGiuseppe in the event of a default by Lawler, and in effect excludes all others. One of those remedies is specific performance. It is available as a remedy, but nothing in the provision suggests DiGiuseppe is relieved of his obligation to prove he is entitled to it under the law. Therefore, we construe the provision in the purchase contract limiting DiGiuseppe's remedies in the event of a default by Lawler to neither waive nor negate DiGiuseppe's obligation to plead and prove all essential elements under Texas common law for obtaining specific performance, including that he was and is ready, willing, and able to perform under the contract.

■ As an alternative basis for relief, DiGiuseppe argues that the omitted jury finding as to his readiness, willingness, and ability to perform may be deemed found in his favor pursuant to Texas Rule of Civil Procedure 279. His theory is that specific performance was at least partially submitted to the jury in the form of a question regarding his compliance with the contract, and Lawler failed to object to the omission of a "ready, willing, and able" question. We agree with the court of ap-

peals that a deemed finding under Rule 279 is not available here.

If no element of an independent ground of recovery that is not conclusively established by the evidence is included in the charge without request or objection, the ground of recovery is waived. TEX. R. CIV. P. 279. As we have noted, DiGiuseppe did not conclusively establish his claim for specific performance from an evidentiary standpoint. Under Rule 279, if at least one element of an independent ground of recovery was submitted to the jury and is "necessarily referable" to that ground of recovery, an omitted finding that is supported by some evidence shall be deemed found by the court in such a manner as to support the judgment. *Id.* DiGiuseppe contends that the submission of a question as to whether he complied with the contract is the submission of at least one of the elements of a claim for specific performance and is necessarily referable to that ground of recovery. However, as the court of appeals pointed out, DiGiuseppe's compliance with the contract is neither essential nor necessarily referable to his request for specific performance. As discussed previously, DiGiuseppe's tender of performance under the contract could have been excused due to Lawler's breach without altering in any way DiGiuseppe's obligation to prove that he was and is ready, willing, and able to perform. Whether DiGiuseppe complied with the contract or was excused from complying with the contract, he would still be required to prove that he was ready, willing, and able to perform to obtain specific performance. Therefore, the question as to his compliance with the contract, without more, is not "necessarily referable" to specific performance as a ground of recovery.

Moreover, the question submitted to the jury as to DiGiuseppe's compliance with the contract addressed Lawler's breach of

contract claim against DiGiuseppe. As the Houston Court of Appeals articulated in *Superior Trucks, Inc. v. Allen*:

> The purpose of the "necessarily referable" requirement in Rule 279 is to give parties, against whom issues are to be deemed, fair notice of a partial submission, so that they have an opportunity to object to the charge or request submission of the missing issues to the ground of recovery or defense. Once a party is on notice of the independent ground of recovery or defense due to the existence of an issue "necessarily referable" thereto, if that party fails to object or request submission of the missing issues, he cannot be heard to complain on appeal, as he is said to have consented to the court's findings on the missing issues.

664 S.W.2d 136, 144 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.). The existence of the question relating to Lawler's claim for breach of contract, standing alone, did not give Lawler fair notice of a partial submission of a claim by DiGiuseppe for specific performance such that Lawler should have known to object to a missing question regarding DiGiuseppe's readiness, willingness, and ability to perform. Pursuant to Rule 279, the question regarding DiGiuseppe's compliance with the contract, therefore, is not necessarily referable to an omitted question relating to DiGiuseppe's readiness, willingness, and ability to perform. DiGiuseppe had the burden to prove that he was ready, willing, and able to perform. He also had the obligation to request a question on this issue. He did not. Rule 279 does not operate to shift the burden to Lawler to request such a jury question regarding specific performance or to object to its absence under these circumstances.

## III. Tender of Performance vs. Readiness, Willingness, and Ability to Perform

■ The dissent argues that a non-breaching plaintiff seeking specific performance satisfies the requirement of showing he is ready, willing, and able to perform by simply offering to perform in his pleadings as opposed to actually proving to the finder of fact that he is and was—in fact—ready, willing, and able to perform.[11] This conflates two distinct concepts: (1) the tender (or offer) of performance and (2) the proof that one has actually been ready, willing, and able to perform. As noted above, in circumstances where a defendant has not repudiated or refused to perform, the law requires a plaintiff seeking specific performance to show both that he was ready, willing, and able to perform at the relevant time *and* that he tendered that performance. These two requirements are not the same thing. One can be perfectly capable of performing contractual obligations and yet not tender or offer that performance. Likewise, a party could very well tender or offer performance, but not be capable of performing. Offering to perform does not establish the ability to perform, nor does having the ability to perform demonstrate a tender of that ability. The law requires a demonstration of both before specific performance may be awarded unless the requirement of tender is excused.

It is entirely reasonable for the law to distinguish between tender of performance and ability to perform when providing the remedy of specific performance. For example, it is sensible to excuse pre-suit tender of performance if it would be useless or if it has been frustrated by the

---

**11.** As noted above, *supra* footnote 10, this issue was not raised by DiGiuseppe as a point of error nor briefed by the parties.

defendant, such as in cases of repudiation by the defendant or an open declaration of a refusal to honor the contract by the defendant. A plaintiff need not actually tender performance when the defendant has repudiated his own obligations. Otherwise, the plaintiff would be required to go further than the defaulting defendant to obtain specific performance. On the other hand, ordering specific performance without requiring the plaintiff to show that he was capable and willing to perform at the time required by the contract grants the plaintiff more than he is entitled to under the contract. A plaintiff's pleading that he *is* ready, willing, and able to perform at the time the lawsuit is filed says nothing about whether he *was* ready, willing, and able to perform at the time required by the contract. A plaintiff who could not arrange funding in time for closing may be able to marshal all the funds he needs by the time he files pleadings in a lawsuit for specific performance.

■ The dissent's view that merely pleading an offer to perform at the time the lawsuit is filed satisfies or replaces the need to demonstrate the ability to perform at the relevant time would essentially rewrite the parties' contract. It would, in effect, eliminate the plaintiff's contractual obligation to be capable of performance at the time the contract required, and grant the plaintiff the option to enforce the contract at any time he might become capable of performing before limitations runs. A defendant's breach or repudiation should not alter the contract and give the non-breaching party a contract different from what he had. The plaintiff must prove that he was ready, willing, and able to perform his obligations when they came due. Otherwise, he would be able to take unfair advantage of the defendant by re-

quiring the defendant's performance without showing that he also could and would have performed as required by the contract.

■ A standard requiring proof of ability to perform, rather than a mere pleading to that effect, is essential to serving the interest of equity underlying the remedy of specific performance. Allowing a plaintiff to simply plead a willingness to tender is no substitute for requiring him to produce evidence showing that he was ready, willing, and able to perform his contractual obligations at the relevant time. Whether a plaintiff was ready, willing, and able to perform his contractual obligations when they came due, and would have done so but for the defendant's breach or repudiation is a question of fact. A fact cannot be proved by a controverted pleading. The pleading simply puts the matter at issue.[12] In this case, DiGiuseppe alleged in pleadings that he "was ready, willing and able to [fund the purchase of property from Lawler] on March 3, 2000," the date DiGiuseppe says his obligation to do so was triggered. The evidence on the subject was conflicting, and the jury was not asked to resolve the dispute. The dissent would hold that DiGiuseppe's pleading was all he needed, that a plaintiff satisfies the need to establish a relevant fact by alleging the truth of the fact. If allegations were the equivalent of proof, there would be no need for trials. The equivocal and conflicting evidence as to DiGiuseppe's ability to close illustrates one of the problems with the dissent's view. What if the evidence establishes that a plaintiff could not and cannot perform? Under the dissent's theory, such a plaintiff would be awarded specific performance based solely on his pleading even if he, in

---

12. Tex.R. Civ P. 92 ("A general denial of matters pleaded by the adverse party which are not required to be denied under oath, shall be sufficient to put the same in issue.").

fact, could not and cannot perform. Without proof that he could perform as required by the contract, the plaintiff gets more than he bargained for—an inequitable result. Without proof that he can perform at the time of the award, the award is pointless.

By combining the pleading and proof requirements, the dissent would nullify the proof requirement and encourage gamesmanship. A purchaser who lacked funds to close a transaction when called for in a contract could later compel performance by a seller who balked. A seller who is unable to deliver title at the agreed time for closing could later compel performance by a remorseful buyer. If a plaintiff was, in fact, unable to perform at the relevant time, a defendant's breach or repudiation is harmless and equity should not provide a remedy in such a situation. The law does not and should not allow pleading readiness, willingness, and ability to perform to substitute for proof of that fact.

The dissent's view is unique. There is no Texas case that has adopted such a rule and we have found none in any other jurisdiction. The dissent's discussion of the Texas cases that have addressed the issue raised by the dissent—*Burford, Corzelius, Parkway, Chessher,* and *Hendershot*—fails to distinguish between pleading tender of performance and proving readiness, willingness, and ability to perform. This distinction is crucial. In each of these cases, *pre-suit tender of performance* was excused due to a repudiation or breach by the party against whom specific perform-

ance was sought. None of the cases hold that the repudiation or breach relieved the party seeking specific performance from the obligation to prove readiness, willingness, and ability to perform. Each of these cases is entirely consistent with the rule that a plaintiff seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation, and (2) the readiness, willingness, and ability to perform at relevant times.[13]

The seminal case of *Burford v. Pounders,* upon which later cases rely, illustrates the point. 145 Tex. 460, 199 S.W.2d 141, 141–42 (1947). Beaird leased land to Burford, with an option allowing Burford to purchase the property for $ 1000, less the rent paid. Beaird ignored the option to purchase and, five months before the lease expired, sold the property to Pounders, who was aware of Burford's lease. *Id.* at 142. According to an undisputed finding by the trial court, Burford was not in a position at the time of the sale to Pounders to exercise his option to purchase the property. *Id.* at 143. Neither Beaird nor Pounders told Burford of the sale. Two months before the lease expired, Burford attempted to exercise his option and tendered $950 to Beaird, which Beaird refused. *Id.* at 142–43. Burford sued for specific performance and the case was tried to the bench. Because he did not know of the sale, Burford did not make any tender of performance on the option at the time of the sale. However, the lease

---

**13.** The dissent also points to the comments to section 363 of the Restatement (Second) of Contracts as supporting its position. However, section 363 deals with the issue of securing the ability to perform by a party seeking specific performance *at the time of the order granting specific performance.* RESTATEMENT (SECOND) OF CONTRACTS § 363 (1981). This section of the Restatement notes that if performance by the injured party cannot be secured to the satisfaction of the court at the time of the requested order of specific performance, specific performance may be refused. Section 363 does not address the question of whether proof of the willingness and ability to perform at the time required by the contract is a prerequisite to obtaining specific performance in any way.

did not specify when the option was to be exercised and the trial court did not find that Burford had failed to invoke his purchase right within a reasonable time. *Id.* at 145. The Court in *Burford* noted with approval the accepted general rules of equity relating to specific performance, stating that a plaintiff "ordinarily is entitled to specific performance where he alleges *and proves* that he ... is ready, able and willing to perform." *Id.* at 144 (emphasis added). The Court agreed that "it was not incumbent on Burford *to make a tender* in the matter of exercising his option within a reasonable time after learning of the sale, but that *it was sufficient for him to offer to do equity in this pleadings.*" *Id.*(emphasis added). The Court then held that since Beaird had repudiated the purchase option by selling to Pounders, *a tender* to Beaird by Burford was unnecessary. *Id.* at 145. At no point did the Court hold or suggest that proof by Burford of readiness, willingness, and ability to perform was unnecessary or waived by Beaird's actions. Burford was required to prove that he was ready, willing, and able to exercise his option to purchase, but because the parties had not specified a deadline for exercising the option, Burford was not required to prove his ability to perform at the time of the illicit sale to Pounders.

*Burford* makes two things clear: (1) pleading an offer to perform is in lieu of tender; and (2) adducing proof that a plaintiff was ready, willing, and able to perform, as required by the pertinent authorities constitutes an entirely separate requirement from tender. This distinction is consistent with available authorities on the subject and has been consistently followed by Texas courts. The dissent reads the statements in Burford as confusing, but we do not. *Burford* was required to prove he was ready, willing, and able to perform, and he did so. The issue in the case was whether Burford would have to

show he was ready, willing, and able to perform at the time of the sale to Pounders, or within a reasonable time. The lower courts held that Burford was required to show his capacity to perform at as of the time of the sale to Pounders—a point at which it was undisputed Burford was not in a position to perform. This Court held that, because there was no deadline in the lease for the purchase option, Burford could meet his burden by showing the ability and willingness to perform within a reasonable time for exercising his option. Burford made this showing.

The dissent also reads *Corzelius* as confusing and seeks to distinguish its holding by reference to the contractual period for performance in the contract at issue in the case. We view *Corzelius* as completely consistent with *Burford* and the other authorities cited above which point out the distinction between tender of performance and proof of ability to perform. The fact that Corzelius needed to show the ability to perform at any point in a contractually agreed time frame does not alter the fact that he needed to show the ability to perform as required by the contract. How such proof could be made rather than whether it must be made was at issue in *Corzelius*. The Court rejected the claim that Corzelius was obliged to produce binding commitments for financing in order to raise an issue of fact. The Court was careful to note other competent evidence in the record, including evidence showing the value of the property he sought to purchase via a mortgage and testimony from a bank officer and his brother on their willingness to lend money for the purchase, as evidence supporting a finding that Corzelius was in a position to perform per the contract. *Corzelius v. Oliver,* 148 Tex. 76, 220 S.W.2d 632, 635–36 (1949).

The dissent also argues that policy considerations weigh in favor of its view because non-breaching buyers would be put at a disadvantage by having to demonstrate at the time of the lawsuit that they were capable of performing as called for by the contract. However, this overlooks the fact that if the buyer was not able to perform his obligations as required by the contract, the breach by the seller did no harm. From an equitable standpoint, it would be unfair to reward the buyer with a result that he could not have achieved—specific performance at a later date based on later acquired capability—simply because of a breach by the seller.

All of the language relied on by the dissent from *Parkway, Chessher, Hendershot,* and *Regester v. Lang,* as suggesting that a pleading alone is sufficient to satisfy part of the plaintiff's burden, refers to tender of performance when the defendant has repudiated. None of the cases stand for the proposition that merely pleading readiness, willingness, and ability to perform is sufficient to obtain an award of specific performance. The dissent's theory merges the concepts of tender of performance and proof of ability to perform. The cases do not. The dissent's view is inconsistent with established case law and would be unique to equity jurisprudence.

### IV.   Refund of Earnest Money

█ DiGiuseppe argues that if the judgment in his favor for specific performance is reversed, he should be allowed to seek recovery on his alternative remedy under the purchase contract of termination and recovery of earnest money he paid. We agree. The court of appeals held that DiGiuseppe waived this option by failing to file a notice of appeal on the issue. However, this Court has held that a litigant who has obtained a favorable judgment and has no reason to complain in the trial court is not required to raise an issue regarding an alternate ground of recovery until an appellate court reverses the judgment. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988). Consequently, DiGiuseppe was not required to raise his alternate theory of recovery until the judgment in his favor about which he had no complaint was reversed. *Id.* As soon as he was aware of the reversal of the judgment by the court of appeals, DiGiuseppe raised the issue of his alternative ground for recovery both in the court of appeals and in this Court. The issue is not waived. Since it has been determined on appeal that DiGiuseppe is not entitled to specific performance as awarded by the trial court, he should be allowed to present his alternative ground for recovery to the trial court for a determination in the first instance as to whether he should recover under that alternative theory.

### V.   Conclusion

We affirm the holding of the court of appeals that the contract at issue in this case does not alter DiGiuseppe's obligation to prove and secure a finding of fact that he was ready, willing, and able to perform his obligations under the purchase contract as a prerequisite to obtaining the equitable relief of specific performance. In affirming this part of the court of appeals' judgment, we hold that an essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he is ready, willing, and able to timely perform his obligations under the contract. We also affirm the holding of the court of appeals that such a finding cannot be deemed based on the jury charge as submitted under Rule 279. Finally, we reverse the court of appeals's holding that DiGiuseppe waived his claim to the alternate ground of recovery under the purchase contract re-

lating to refund of the earnest money, and hold that he should have an opportunity to present this claim to the trial court for disposition. Accordingly, we affirm the judgment of the court of appeals in part, reverse in part, and remand the cause to the trial court for further proceedings consistent with this opinion.

Justice GREEN filed a dissenting opinion, in which Chief Justice JEFFERSON, Justice O'NEILL, and Justice JOHNSON joined.

Justice MEDINA took no part in the decision of the case.

Justice GREEN, joined by Chief Justice JEFFERSON, Justice O'NEILL, and Justice JOHNSON, dissenting.

The Court requires an innocent buyer, otherwise excused from his contractual obligations by the seller's breach, to nevertheless prove, in a suit for specific performance, that he could have fully performed those obligations had the seller not breached. 269 S.W.3d at 590. This makes no sense for at least two reasons. First, it provides the breaching seller information he was not entitled to under the contract. A seller entering into a real estate transaction is rarely entitled to know the details of how the buyer intends to finance the transaction. At closing, the buyer will either perform or not, and in the latter event, the contract will provide remedies for the breach. But if the seller breaches the contract before closing and the buyer sues to enforce the deal, the Court now says the buyer must prove to a fact-finder, at a trial many months or years after the sale was originally supposed to close, that he was, at the time specified by the contract, "ready, willing, and able" to perform. *Id.* at 590. To do this, the innocent buyer will necessarily be required to reveal his plan for financing the transaction—information a seller generally would not be privy to under agreed contract terms.

Second, and perhaps most important, the Court's holding makes no sense because a finding that the buyer was ready, willing, and able to perform at the closing time specified in the contract is irrelevant. Although the Court does not say what the trial court is supposed to do with such a finding, presumably it would order a date for the transaction to close within a reasonable time. But what if the buyer was able to close on the original contract date and is unable to close on the court-appointed date? The whole exercise is rendered meaningless. The only thing that makes sense is to do precisely what the trial court did in this case, which is to set a closing date within a reasonable time after a finding that the seller breached. While it is true that the buyer might gain some benefit by getting a reprieve from the original contract closing date, it is just as likely, particularly in light of today's troubled financial times, that he will be worse off and be unable to close. But at least this has the virtue of being meaningful and of not placing impractical burdens on an innocent party, both features that are lacking in the Court's rule.

The Court's holding will also tend to severely limit or eliminate specific performance as a viable remedy for a seller's breach of a real estate contract. In large transactions, it is doubtful that many non-breaching buyers would be willing to subject themselves and/or their investors to open discovery of financial portfolios on the question of whether the buyer was sufficiently capable of purchasing the property at the time required by the contract. Unscrupulous sellers will be virtually immunized from the penalty of specific performance, the most severe consequence of breaching a contract of sale, and disorder will be the order of the day in volatile real

estate markets. Because the Court's holding lacks common sense and adheres to a misreading of our precedents, I respectfully dissent.[1]

I agree with the Court that it has long been part of the jurisprudence of this state that, to obtain the equitable remedy of specific performance, a party must show himself to have been "ready, willing, and able" to timely perform his obligations under the contract being enforced. *See* 269 S.W.3d at 593; *see also Ratcliffe v. Mahres,* 122 S.W.2d 718, 721–22 (Tex.Civ.App.-El Paso 1938, writ ref'd) (quoting 4 JOHN NORTON POMEROY, JR., A TREATISE ON EQUITY JURISPRUDENCE § 1408, at 2779 (3d ed.1905)). But it has likewise been a longstanding Texas rule that a non-breaching plaintiff seeking specific performance need only make such a showing by offering to perform in his pleadings. *Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 144 (1947). The Court's insistence that a party seek and obtain a jury finding that he is ready, willing, and able to perform before being entitled to the remedy departs from that rule.

Specific performance is an equitable remedy that rests in the sound discretion of the trial court. *Kress v. Soules,* 152 Tex. 595, 261 S.W.2d 703, 704 (1953); *Am. Apparel Prods., Inc. v. Brabs, Inc.,* 880 S.W.2d 267, 269 (Tex.App.-Houston [14th Dist.] 1994, no writ). Generally, to be entitled to specific performance, a party must prove that it has complied with all the contract's terms. *Glass v. Anderson,* 596 S.W.2d 507, 513 (Tex.1980). When a seller breaches a real estate contract, however, we have long held that the buyer need not actually tender the purchase price in order to seek specific performance. *Ward v. Worsham,* 78 Tex. 180, 14 S.W. 453, 453 (1890).

> The practice in equity in similar cases is not to require a tender or a payment into court of the purchase money.... When [the buyer] pleads his right he should offer to pay, and the court, if judgment should be given for him, should decree a payment within a reasonable time, and that, in default of a compliance, his right should cease and be determined.

*Id.* This has remained the law in Texas for well over 100 years, as the Court recognizes. *See* 269 S.W.3d at 594. Until today, however, the Court has not required a non-breaching buyer to make the "useless and idle" showing of proof of ability to complete the transaction when the seller's repudiation of the contract excused the buyer from tendering the purchase price. *See Burford,* 199 S.W.2d at 145.

The issue of a party's own performance as a condition to obtaining specific performance is a matter to be contemplated by the trial court's judgment, not the jury's verdict. *See Regester v. Lang,* 49 S.W.2d 715, 716–17 (Tex. Comm'n App. 1932, holding approved) (holding it was reversible error for a defendant to argue to the jury that the plaintiff had not paid the purchase money into the court registry, and that specific performance might result in the defendant delivering his prop-

---

1. In footnote 10, the Court takes the position that DiGiuseppe did not raise or argue that he was not required to prove or obtain a finding of fact that he was ready, willing, and able to perform, suggesting that such an argument should not be addressed in this dissent. 269 S.W.3d at 597. Yet that is the basis for the court of appeals' decision, —— S.W.3d ——, ——, and the Court provides exhaustive discussion on this very issue in its opinion. *Id.* at 593. In the first issue raised in his petition for review, DiGiuseppe claims that "[t]he court of appeals erred in reversing the trial court's award of specific performance to DiGiuseppe." I believe, as the Court appears to, that DiGiuseppe's issue sufficiently raised the question of whether Texas law requires such proof from a non-breaching buyer.

erty without being paid). "It is sufficient if [the party seeking specific performance] is ready and willing and offers to perform in his pleadings." *Id.* at 717. To require anything more would be futile because, as this Court recognized in *Regester*, the buyer "would be required under a proper decree of specific performance to pay this sum before he could obtain any interest" in the property. *Id.*

We reiterated these principles in *Burford v. Pounders*, instructing that when a seller has refused to perform and the buyer's tender would be futile, "the material consideration is that [the buyer] offered in his pleadings to do equity," and nothing more is required. 199 S.W.2d at 145. The plaintiff Burford was a tenant in possession with an option to buy under a right of first refusal. *Id.* at 141–42. The lessor, ignoring Burford's option, conveyed the property to defendant Pounders. *Id.* at 142. Two months after the sale, Burford attempted to exercise his option, eventually seeking specific performance. *Id.* at 142–43. Burford would not have been able to make payment at the time of the sale to Pounders, but would have been able to pay two months later. *Id.* at 143–44. Because Burford had to exercise the option to buy within a "reasonable time," the issue in the case was whether Burford was required to tender performance within a reasonable time of learning of the sale to Pounders, or whether it was sufficient for Burford to later offer to perform in his pleadings. *Id.* at 144–45. Citing *Regester*, we again emphasized that all that was necessary in such a case is that the party seeking specific performance be ready and willing and offers to perform *in his pleadings. Id.* at 144 (citing *Regester*, 49 S.W.2d at 717). And when a party offers in his pleadings to do equity, "[t]he *only* matter remaining to be done by the trial court is to direct that payment be made" and that the sale be completed, awarding the purchaser judg-

ment for title. *Id.* at 145 (emphasis added).

One statement in *Burford*, however, appears to have given rise to the confusion of the lower courts on this issue. Quoting from Corpus Juris, the Court in *Burford* stated that a "complainant ordinarily is entitled to specific performance where he alleges *and proves* that he ... is ready, able, and willing to perform." *Id.* at 144 (quoting 58 C.J. *Specific Performance* § 316 (1932)) (emphasis added). After citing that general rule, though, the Court went on to explain the exception that excuses tender for non-breaching buyers, citing additional Corpus Juris sections and comments:

> [Regarding a specific performance suit brought by a purchaser, under a footnote to section 342], it is stated that "In Texas" an actual tender "is not necessary where the purchaser pleads and proves a willingness to pay, but is entitled to relief provided that, within a time fixed in the decree, he shall pay the amount due".... In section 348 it is stated that "whatever difference of opinion may exist as to the original necessity of a tender of the consideration before suit, ... it appears to be quite well settled that a formal tender is excused where a tender would be useless and idle ceremony"; and that a "tender is also excused where defendant repudiates the contract"; and further that "tender in pleadings (is) sufficient" where plaintiff sets forth that he is ready, able and willing "or ... pays the consideration into the court." In section 349, ... it is stated that "the necessity of tender is dispensed with where defendant repudiates the contract, or makes any declaration which amounts to a repudiation...." In the following section (350) it is stated that "if a tender of the purchase price or other sums before suit

is necessary, it is excused where the vendor or seller has put it out of his power to perform, as where he has conveyed the property ... to a third person."

*Id.* at 144–45 (emphasis removed). The Court never returned to any discussion of the general rule that requires proof of ability to pay, instead holding that the seller defaulted and repudiated by selling the property to Pounders. *Id.* at 145. For a non-breaching buyer, "[t]he material consideration is that [he] offer[s] in his pleadings to do equity." *Id.* The court emphasized this rule with italics: "[A]ll that is required in such case is that the plaintiff place himself in favor with the court, *and this may be done by a proper offer in the pleadings.*" *Id.* at 143 (quoting 49 Am.Jur. *Specific Performance* § 144, at 167 (1943)) (italics in original). Because Burford had made the sufficient showing by offering in his pleadings to do equity, the Court held that Burford was entitled to specific performance. *Id.* at 145. The Court later confirmed that holding, saying that *Burford* adopted the substance of the rule that "if, because of defects in the vendor's title, which he fails or refuses to cure, ... a tender of performance by the vendee would be a useless act ..., his failure to make such tender will not preclude in his behalf the equitable relief of specific performance, at least where he tenders performance in his bill or petition." *McMillan v. Smith,* 363 S.W.2d 437, 442–43 (Tex.1962) (quoting 79 A.L.R. 1240).

Although the Court claims *Burford* holds that a non-breaching plaintiff is required to prove he was ready, willing, and able to perform, and somehow distinguishes between tender and proof of ability to pay, the Court misrepresents the rule in that case. In *Burford,* the Court held that when a seller repudiates the contract, tender is excused and "all that is required"

is that the plaintiff offer to do equity, which can be done in the pleadings. 199 S.W.2d at 143. *Burford* does not support the Court's new rule, and neither do the other cases relied on by the Court.

The Court cites *Corzelius v. Oliver,* another case involving the buyer's ability to pay within a contractual time limit for exercising an option. 148 Tex. 76, 220 S.W.2d 632, 633 (1949). In *Corzelius,* the plaintiff had a one-year option to reacquire lands conveyed to his ex-wife as part of a divorce settlement. *Id.* Although the plaintiff attempted to exercise the option, his ex-wife (the defendant) refused because she objected to his source of financing, and eventually a jury found for the plaintiff. *Id.* at 633–34. At trial, one of the issues before the jury was whether the plaintiff could have made payment within the one-year time limit contemplated by the contract. *Id.* at 634. The jury found that, but for the defendant's actions, such a payment could have been timely made. *Id.* On appeal, the only issue was the defendant's contention that "there was no evidence to show that Corzelius was ready and able to perform within the time limit of the option." *Id.* In addressing that point, the Court noted that "it would appear but reasonable" for Corzelius to show that he could have performed under the agreement, *id.* at 635, and then detailed the evidence to conclude that there was at least some evidence to support the jury's finding in that regard. *Id.* Certainly, taken alone, this part of *Corzelius* could arguably support an interpretation that proof of the ability to pay is an appropriate subject for a fact-finder's consideration in a specific performance case. But such a reading is not accurate and has given rise to confusion in the lower courts. Contrary to the Court's conclusion, *see* 269 S.W.3d at 693, nowhere does *Corzelius* indicate that a non-breaching buyer, under a non-

option contract, must prove ability to perform at the time specified in the contract when tender of payment is excused. *Corzelius* is distinct from the non-option contract case because the timing of the buyer's ability to pay was relevant to whether the buyer had exercised his option to purchase and therefore the seller had an obligation to convey the property. Even when a buyer must show ability to pay, a buyer need not show a firm financing commitment to be entitled to specific performance, but need only put on evidence of his financial capacity and creditworthiness. *Corzelius*, 220 S.W.2d at 635 (recognizing that financing sources would probably be reluctant to execute a commitment for financing to complete a sale of lands the owner had decided not to convey). Notwithstanding the evidence offered at trial and the jury's finding, "Corzelius [was not] bound to do more here than make the tender which was contained in his pleadings." *Id.*

It appears that misreading of the brief statements in *Burford* and *Corzelius* led courts of appeals to rule erroneously that a plaintiff seeking specific performance must always prove to a fact-finder that he is ready, willing, and able to perform under the contract. *See 17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 256 (Tex.App.-Dallas 2002, pet. denied); *Chessher v. McNabb*, 619 S.W.2d 420, 421 (Tex.Civ. App.-Houston [14th Dist.] 1981, no writ); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex.Civ.App.-Amarillo

1972, no writ). Those cases did not offer any reasoning as to why proof before a fact-finder is necessary even though actual tender is excused when a seller has breached. On this point, *17090 Parkway* simply cites *Chessher* and *Hendershot*. 80 S.W.3d at 256. *Chessher* cites only *Hendershot*. 619 S.W.2d at 421. *Hendershot* cites only this Court's decisions in *Burford* and *Corzelius* without any analysis and without recognizing that those cases involved option contracts containing conditions precedent to the seller's obligation to convey the property. *See* 476 S.W.2d at 920. *Hendershot's* misreading of *Burford* and *Corzelius* therefore resulted in repeated error in the courts of appeals, which now repeats itself in this Court, eclipsing the long-standing rule that a party seeking specific performance need only offer to perform in its pleadings.

Lawler cites a number of cases in support of his position that ability to pay must be proven at trial, but I am not persuaded that such a rule exists in Texas.[2] As already discussed, the cases requiring proof of ability to pay at trial are perpetuating *Hendershot's* erroneous reading of our opinions in *Burford* and *Corzelius*, which did not distinguish, as the Court does, between an excused tender requirement and an unexcused requirement to prove ability to pay. The Court contends that such a distinction is "entirely reasonable," noting that a party could well offer performance but not be capable of per-

---

**2.** See *Kress*, 261 S.W.2d at 704 (recognizing that specific performance is an equitable remedy); *17090 Parkway*, 80 S.W.3d at 256 (relying on erroneous and distinguishable courts of appeals' cases, as explained above); *Lazy M. Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex.App.-Austin 1998, pet. denied) (rejecting specific performance because the buyer breached the contract and had unclean hands); *Am. Apparel Prods.*, 880 S.W.2d at 269–70 (rejecting specific perform-

ance because the buyer unilaterally rescinded the contract); *Gordin v. Shuler*, 704 S.W.2d 403, 408 (Tex.App.-Dallas 1985, writ ref 'd n.r.e.) (rejecting specific performance because the buyer failed to comply with the contract terms and failed to disclose material information); *Chessher*, 619 S.W.2d at 421 (same); *Hendershot*, 476 S.W.2d at 920 (erroneously interpreting *Burford* and *Corzelius*, as explained above).

forming. 269 S.W.3d at 599. But when the seller's breach relieved the buyer of his obligation to appear at closing and perform as required under the contract, it may be impossible for anyone to know whether the buyer could have performed. Continued efforts to perform such as arranging financing or appearing at the scheduled closing would be useless, just as the Court recognizes that tendering payment would be. The Court erroneously concludes that ordering specific performance without requiring the non-breaching buyer to prove ability to pay at the time required by the contract "grants the plaintiff more than he is entitled to under the contract." *Id.* at 600. In fact, the opposite is true. When a contract provides for simultaneous performance by both seller and buyer, the seller must give the buyer the full opportunity to perform as provided by the contract, or face remedies for breach in cutting off that opportunity. Requiring a buyer to prove that it could have performed at a time when the seller's breach eliminated that obligation and when the subject property was under contract for sale to a third party imposes a much higher burden on the buyer than the contract requires. The seller's own breach cannot impose an extra-contractual obligation on the buyer to prove useless financing commitments. The Court contends that my view would "essentially rewrite the parties' contract" and "eliminate the plaintiff's contractual obligation to be capable of performance at the time the contract required." 269 S.W.3d at 600. In fact, it is actually the breaching seller who altered those contractual obligations when he breached the contract by agreeing to sell the property to a third party.

The Court relies on contracts treatises as support for its claim that requiring a non-breaching buyer to prove ability to pay is an entrenched rule in Texas jurisprudence. 269 S.W.3d at 593. The author

of the primary treatise relied on by the Court cites law from various jurisdictions, seemingly favoring Montana and Connecticut, but the only citation to Texas law is to a case that does not mention or discuss the showing a plaintiff must make to obtain specific performance. 25 RICHARD A. LORD, WILLISTON ON CONTRACTS § 67:15, at 236–38) (4th ed.2002); *see Shuler v. Gordin,* 644 S.W.2d 446, 447–49 (Tex.1982). Edward Yorio's treatise, which states the general rule that a plaintiff must show readiness, willingness, and ability to perform, is silent on whether or how a non-breaching buyer must make that showing. EDWARD YORIO, CONTRACT ENFORCEMENT: SPECIFIC PERFORMANCE AND INJUNCTIONS § 6.4, at 145 (1989 & Supp.2004). Yorio acknowledges the Texas rule in a footnote, however, by quoting a Seventh Court of Appeals case holding that "when the seller has conspicuously breached the contract, it is only necessary that the purchaser be ready and willing, and offers to perform within his pleadings." *Id.* at n. 10 (quoting *Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518, 527 (Tex.App.-Amarillo 1998, pet. denied), which relied on *Burford,* and also citing *17090 Parkway* ). Comment b to section 363 of the Restatement (Second) of Contracts, which addresses securing performance for an agreed exchange and states that specific performance may be refused if "performance is not secured to the satisfaction of the court," supports the long-standing Texas rule:

> The desired security can often be afforded by the terms of the order itself. If performance by the injured party is already due or will be due simultaneously with the performance of the party in breach, the order may be made conditional on the injured party's rendition of his performance. . . .

The question of security does not arise until the time for issuance of an order. At the pleading stage, a mere allegation by the plaintiff that he is ready and willing to perform is usually sufficient in a suit for specific performance or an injunction. Actual performance or tender is generally not required.

Restatement (Second) of Contracts § 363 cmt. b (1981). Because DiGiuseppe need only offer to perform in his pleadings to establish his entitlement to specific performance, the only disputed fact issue to be resolved by the jury was whether Lawler breached the contract. *See White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983) (holding that only disputed factual issues are presented to the jury).

Aside from the doctrinal reasons for this rule, there are important policy considerations at stake here. Requiring advance proof of an ability to pay puts the breaching seller in a better position than he would have been if the deal had gone through as contemplated in the contract by allowing him greater security in the solvency of the transaction. Unless the contract provides otherwise, sellers must wait until closing to find out whether the buyer can and will actually go through with the deal. If a seller suspects that a buyer cannot perform, the seller faces a choice: (1) wait until closing to see if the buyer tenders the required payment, or (2) breach the contract and face remedies for breach. The Court introduces the concept of harmless breach, concluding that a seller's breach "does no harm" when the seller, in advance of closing, believes a buyer will not be capable of performing under the contract and prematurely eliminates the buyer's opportunity to complete the transaction. 269 S.W.3d at 603. But such a breach, which cuts off a buyer's opportunity to show that he is in fact capable of performing at the time performance is due, is inherently harmful.

Requiring a non-breaching buyer to demonstrate ability to pay imposes a burden on buyers to secure firm funding commitments well in advance of closing and disclose funding sources, a burden that typically would not exist in transactions performed under a property sales contract. Until today, we have never required a non-breaching purchaser to put on such proof. *Cf. Corzelius*, 220 S.W.2d at 635 (explaining that it would not be necessary for a purchaser "to produce a firm commitment for an adequate loan" and recognizing that "[b]anks, insurance companies, and others loaning money would probably be reluctant to execute a commitment for a loan to complete a sale of lands which the owner had declared she would not convey"). The sale of property often becomes a complex transaction that may involve developers with many properties, numerous lenders, investors who may wish to remain confidential until closing, and other sources of cash flow that may not come together until the last minute. Sellers find out at closing whether a buyer can pay, and buyers need not choose a source of financing or secure a financing commitment until shortly before closing. *See Shuler*, 644 S.W.2d at 448 (indicating that the time for buyer and seller to show their ability to perform is at closing). I see no reason to change this state of affairs simply because a seller has, for whatever reason, breached his agreement and forced a non-breaching plaintiff to seek judicial enforcement. And, in a case such as this, in which the buyer testified that he was ready and able to close when acceptable zoning was approved and continued to be ready and able to close, equity demands no more of a non-breaching buyer.

Finally, it is entirely possible that a buyer who is ready, willing, and able to perform at the time of trial may find his

fortunes diminished by the time the closing date arrives such that he is no longer able to make payment. Just as we do not require tender of payment when it would be a "useless and idle ceremony," we cannot require a showing of ability to perform at the time of trial when it, in many cases, would be equally meaningless. *See Burford,* 199 S.W.2d at 145. The most efficient way to ensure DiGiuseppe's payment is not to burden the fact-finder with a speculative inquiry into the buyer's finances and potential financing prospects, but rather for the trial court to set a prompt closing date, supervised by the court, during which DiGiuseppe may tender performance. Only then must DiGiuseppe prove ability to pay, by tendering the payment due. If DiGiuseppe is unable to close, Lawler will then be entitled to remedies the contract provides.

In my view, once a party has pled the remedy of specific performance with sufficient specificity, nothing else is required with regard to ability to pay. It is understood that by bringing the action (and undertaking the costs and risk involved in such litigation), the party is ready and willing to consummate the transaction should the court render judgment in its favor. Here, DiGiuseppe has done all that is required.[3] His first pleading in the trial court and his cross-petition requested the remedy of specific performance and stated that, as soon as acceptable zoning was approved, he was ready, willing, and able to satisfy his funding obligations under the contract. DiGiuseppe's pleadings indicated that he "possessed the necessary capital to move forward with the acquisition of the Property." Moreover, during trial, he testified that he was ready and able to close after March 7, 2000, the date the city council approved acceptable zoning.[4] DiGiuseppe stated that he had three homebuilders who would have funded the purchase and that "if there hadn't been another contract in place, [they] would have closed the deal." Though the Court finds DiGiuseppe's testimony "equivocal and conflicting" because DiGiuseppe did not demonstrate that would not have been able to close the transaction on his own, 269 S.W.3d at 600, I am satisfied that DiGiuseppe presented at least some evidence of his ability, with the help of investors he had secured, to tender the money required under the contract.[5] *See Corzeli-*

---

**3.** Strictly speaking, the pleadings filed by DiGiuseppe did not request the remedy of specific performance. Frisco Master Plan, the limited partnership to which DiGiuseppe transferred his interest under the contract, requested specific performance as a third-party plaintiff to the suit between DiGiuseppe and Lawler. Accordingly, the trial court's judgment granted specific performance in favor of Frisco Master Plan, not DiGiuseppe. Because DiGiuseppe was acting on behalf of Frisco Master Plan and Southbrook Development Company, I have not distinguished between these three parties for the purposes of this opinion.

**4.** DiGiuseppe testified as follows:
Q. Could you close after March 7th [the date DiGiuseppe accepted the zoning changes]?
A. Absolutely.
Q. Could Mr. Lawler close after March 7th?
A. No.
Q. Were you ready and able to close after March 7th?
A. We were.
Q. Are you ready and able to close today?
A. We are.
* * *
Q. You want to close this contract in accordance with its terms, don't you?
A. Yes, I do.

**5.** Though, as the Court points out, DiGiuseppe did not have cash in hand to personally tender payment under the contract, DiGiuseppe testified that he had secured financing sources.

Q. Now, you had no ability to close this transaction yourself, did you?
A. I, personally, was not going to close the deal myself, no.

*us,* 220 S.W.2d at 635 (holding that a buyer is obligated to do no more than offer to perform in his pleadings, but a buyer who put on some evidence of creditworthiness and willing funding sources sufficiently established ability to pay). Contrary to the Court's suggestion, DiGiuseppe was not required to prove that he had cash in hand or that a written financing agreement was in place. DiGiuseppe offered to do equity in his pleadings, and he presented some evidence of his willingness and ability to perform under the contract. When a seller's repudiation of a contract makes the buyer's tender of payment useless and excuses that requirement, there is no principled reason to impose on the innocent buyer an obligation to establish pre-closing funding arrangements, which is not required by the contract and has never been required by this Court. DiGiuseppe did all that is required to show that he is entitled to the remedy of specific performance. I believe that, upon the jury's finding that Lawler breached the contract and DiGiuseppe did not, the trial judge had authority to order specific performance. Because the Court holds otherwise, I respectfully dissent.

---

Q. You were going to get some investors to do it, weren't you?
A. I had them.
* * *
Q.... Is there any question—I want you to tell the jury—is there any question that you

have the commitments and have the money to close this deal?
A. Not at all—
* * *
Q. And can you close this deal now?
A. Yes.