

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00192-CV
_____


BOB E. WOODY, THE RANCH L.L.C.,
AND HECTOR H. CARDENAS, JR., APPELLANTS

V.

J. BLACK'S, L.P. AND J. BLACK'S, G.P., L.L.C., APPELLEES

_____

On Appeal from the 345th District Court
Travis County, Texas
Trial Court No. D-1-GN-09-001436, Honorable Stephen Yelenosky, Presiding

_____

October 18, 2013

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This appeal arises from a commercial landlord-tenant dispute over the sublease of premises located in Austin. Judgment in the trial court was for appellee J. Black's, LP and J. Black's, GP, LLC (J. Black's). Appellant Bob E. Woody and the Ranch, LLC (Woody) present five issues on appeal. Woody's attorney, Hector H. Cardenas, Jr., joins Woody's fifth issue challenging an award of monetary sanctions in favor of J. Black's. We will affirm in part and otherwise reverse and remand for further proceedings.

## Background

In 2006, Woody leased property located at 710 West 6th Street in Austin from Montwalk Holdings, LP (the master lease). Woody subleased the first floor of the structure to J. Black's for use as a bar and restaurant. Woody operated a bar known as "The Ranch" in the space above and beside J. Black's. Mr. Woody is also a limited partner in J. Black's.

The primary term of the sublease began September 1, 2006, and ended August 31, 2009, but the sublease gave J. Black's options for extending the term.

To exercise its option to extend the sublease term for an additional thirty-six months, the sublease required J. Black's to provide Woody written notice by March 4, 2009. By notice sent by certified mail, return receipt requested, dated February 23, 2009, J. Black's stated its intention to extend the sublease term through August 31, 2012. The notice was addressed to Woody at the location specified in the sublease. However, it was not received by Woody.

Through two March 2009 letters, Woody demanded that J. Black's cure asserted sublease defaults concerning food service and installation of gas heaters connected to Woody's gas meter without consent and without city permits. J. Black's paid Woody the amount demanded for natural gas used by the heaters and eventually removed the heaters.

During April 2009 Woody's gave J. Black's written notice that its February 23, 2009 notice was not received and the sublease term therefore was not extended. Woody demanded that J. Black's vacate the premises by midnight on August 31, 2009.

2

Woody filed suit on May 5, 2009, alleging J. Black's committed conversion, breach of contract, theft, and trespass to personal property. At Woody's request, a temporary restraining order issued against J. Black's.

J. Black's answered and through a counterclaim alleged Woody committed fraud concerning the issue of gas heaters and that Woody "repudiated and breached" the sublease by alleging non-existent lease defaults, refusing to recognize the extension of the sublease term, and demanding that J. Black's vacate the premises. J. Black's requested specific performance of the sublease, or alternatively, damages.

J. Black's moved for partial summary judgment on its breach of contract counterclaim. It argued Woody breached the sublease by refusing to acknowledge the extension of the sublease term and demanding holdover rent. The motion was set for hearing on December 14, 2009. On December 9, Woody filed a document containing a response to the motion and its own motion for partial summary judgment on the grounds that J. Black's breached the sublease and that the sublease expired on August 31, 2009. J. Black's objected to the untimeliness of notice and the trial court did not consider Woody's motion at the December 14 hearing. According to an order signed December 17, the trial court granted J. Black's motion "in full."

Through an August 2010 motion, J. Black's sought a second partial summary judgment requesting judgment that it did not breach the sublease, Woody breached the sublease by asserting groundless defaults, and J. Black's did not commit conversion, trespass, and theft as Woody alleged. The trial court rendered a partial summary judgment that Woody take nothing on its claims that J. Black's defaulted on the

3

sublease and on Woody's claims against J. Black's for conversion, trespass, and theft. Judgment was not granted, however, on J. Black's claim that Woody breached the sublease by falsely asserting defaults.

During November 2010, J. Black's filed a third motion for partial summary judgment, this time requesting specific performance of the sublease and an award of attorney's fees under Civil Practice and Remedies Code § 38.001 and the master lease.

In January 2011, the trial court signed a judgment, in the form of a final judgment, which, among other things, decreed specific performance and awarded J. Black's the requested attorney's fees under section 38.001. Woody's motion for new trial was granted by an order signed in April 2011.

In October 2011, Woody filed a motion for summary judgment on the grounds that the sublease terminated on August 31, 2009, that J. Black's was in default, and seeking recovery of holdover rent. J. Black's responded and also requested sanctions against Woody and Cardenas under Civil Practice and Remedies Code Chapter 10. According to J. Black's, Woody's motion for summary judgment sought relief previously rejected by the trial court. The trial court denied Woody's motion and entered a monetary sanction of $6,958.00 against Woody and Cardenas. A final judgment was signed on January 12, 2012, and Woody's motion to modify and for new trial was denied by order signed March 28, 2012.

Analysis

Extension of Sublease

By its first, second, and third issues Woody contends the trial court erred in adjudging Woody breached the sublease by refusing to acknowledge its extension by J. Black's.

We review the trial court's grant of summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). We take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). To obtain summary judgment, a movant must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986).

In part relevant to this discussion, the sublease provides:

3.01 Term. . . . If Sublessee is not in default under the Sublease, and subject to notice from Sublessee to Sublessor at least one hundred and eighty (180) days prior to the end of the Term or an extension of the Term, that Sublessee intends to exercise one or all of sublessee's four options to extend the Sublease for thirty-six (36) additional months, each as further described in Section 4.01 (the "Option Periods"), the term of the sublease may be extended by Sublessee accordingly. The option to renew belongs to Sublessee and will not require Lessor's or Sublessor's approval.

Material to the parties' present dispute, the sublease further provides:

9.04 <u>Notices.</u> Subject to Article 1.02[1] hereof, all notices, consents, requests, instructions, approvals and other communications provided for herein and all legal process in regard hereto shall be validly given, made or served, if in writing and delivered personally or sent by United States certified or registered mail, postage prepaid, return receipt requested:

> If to Sublessor:
> 2204 Point Bluff
> Austin, Texas 78746
> Attn: Bob Woody
>
> * * *

or to such other addresses as any party hereto may, from time to time, designate in writing delivered in a like manner.

Woody's contention summary judgment for J. Black's was improper begins with the summary judgment evidence Woody did not receive the February 23, 2009 notice J. Black's sent by certified mail, return receipt requested. According to Woody's interpretation of the sublease's section 9.04, an effective notice, if sent by certified mail, return receipt requested, must actually be delivered to the addressee. For support for his reading of the section, Woody depends on the phrase "delivered in a like manner," appearing at the section's end. His reading is further supported, Woody contends, by the language of section 3.01 of the sublease which requires notice of extension "from" J. Black's "to" Woody. Woody contends that because he did not receive J. Black's notice, it was not delivered nor was it notice "to" him.

We follow settled rules of contract construction when construing a lease. *Luccia v. Ross,* 274 S.W.3d 140, 146 (Tex.App.--Houston [1st Dist.] 2008, pet. denied). Construction of an unambiguous contract is a question of law we review *de novo*.

---

[1] The sublease is not consistent in its use of the identifiers "section" and "article." Solely for the sake of clarity, we will hereinafter refer to the numbered paragraphs of the sublease as "sections."

6

*Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex. 2011). Our primary concern when construing a written contract is ascertaining and giving effect to the intention of the parties expressed in the document. *Frost Nat'l Bank v. L&F Distribs., Ltd.,* 165 S.W.3d 310, 311-12 (Tex. 2005). If possible, when construing a contract, we first consider the instrument's plain language. *Rowan Companies, Inc. v. Wilmington Trust Co.,* 305 S.W.3d 698, 708 (Tex.App.--Houston [14th Dist.] 2009, pet. granted, judgm't vacated w.r.m.); *see Lesikar v. Moon,* 237 S.W.3d 361, 367 (Tex.App.--Houston [14th Dist.] 2007, pet. denied) ("Common words should be given their plain meaning unless the context indicates the words were used in another sense"). Absent the manifestation of a different intention, courts interpret contract language according to its generally prevailing meaning. *Rowan Companies, Inc.,* 305 S.W.3d at 708.

We find Woody's contentions meritless. By the plain language of section 9.04 of the sublease, notices are validly given if in writing *and* delivered personally *or sent* by United States certified or registered mail, postage prepaid, return receipt requested to the designated address. Woody's reading, requiring that notices sent by certified mail be delivered, ignores the section's plain provision of alternate means of giving notice, by personal delivery or by mail, certified or registered. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003) (to ascertain the true intentions of the parties from an instrument, a court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless").

The phrase to which Woody points, "delivered in a like manner," plainly refers not to the giving of notices or other communications but to a party's designation of a notice

7

address other than that listed in the sublease. If, as Woody contends, the phrase requires that such designations actually be delivered, a question that is not before us and on which we express no opinion, such would not be surprising, since designation of a new notice address by a party amounts to an amendment of the sublease.

If resort to rules of construction is necessary to aid our understanding of the role of the phrase "delivered in a like manner," we find the grammatical "rule of the last antecedent" applicable. The rule provides that "qualifying words, phrases, and clauses" apply only to the immediately preceding words or phrase and "are not to be construed as extending to and including others more remote."[2] *Rowan Companies, Inc.,* 305 S.W.3d at 708; *see Stewman Ranch, Inc. v. Double M. Ranch, Ltd.,* 192 S.W.3d 808, 812 (Tex.App.--Eastland 2006, pet. denied) (explaining rule and noting it is not inflexible or controlling and must be applied with due regard for the entire instrument). *Cf. Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (last antecedent rule not absolute and can be overcome by other indicia of meaning).

The rule of the last antecedent supports the plain meaning we discern in the section's wording. Under the rule, the phrase "delivered in a like manner" would be deemed to apply to the immediately preceding phrase "such other addresses as any party hereto may, from time to time, designate in writing." It would not be read to leap backward and modify the plainly-stated options of giving notice by certified or registered mail. *Stewman Ranch, Inc.,* 192 S.W.3d at 812 ("relative and qualifying phrases are to be applied to the words or phrases immediately preceding them . . . .").

---

[2] The last antecedent rule of construction means that "A or B with respect to C" contains two items: (1) "A" and (2) "B with respect to C." *Stepnowski v. Comm'r,* 456 F.3d 320, 324 n.7 (3d Cir. 2006).

Woody makes a passing alternative claim that the notice provision of the sublease is ambiguous. If a contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *Webster,* 128 S.W.3d at 229. Aside from whether Woody properly may raise ambiguity for the first time on appeal, our conclusion the provision's plain language, supported by an applicable rule of construction, lends itself to only one reasonable reading requires us also to conclude it is not ambiguous.

Woody makes brief reference to its motion for partial summary judgment seeking holdover rent. But this argument depends on a finding that J. Black's did not provide timely notice of its intention to carry the sublease into the first option period. Absent such a finding, the argument also is without merit.

Finding the trial court was correct to conclude J. Black's gave timely notice of its intention to extend the term of the sublease, we overrule Woody's first, second and third issues.

Specific Performance

Woody argues by its fourth issue that the trial court erred in decreeing specific performance in favor of J. Black's and awarding J. Black's attorney's fees. In subpart (C) of the issue, Woody specifically contends J. Black's failed to prove it was ready, willing and able to perform the first option term of the sublease.[3]

---

[3] The nub of the question concerns extending the sublease into the first option period, that is from August 31, 2009, through August 31, 2012. But before briefing was

9

J. Black's obtained its decree of specific performance through its third motion for partial summary judgment. As to this remedy, the final judgment says only, "Specific Performance of the Sublease is equitable and necessary to afford [J. Black's] sufficient relief[.]" From its pleading, it appears the performance J. Black's sought was of "the terms related to the extension of the term of the Sublease" although in its brief it tells us the judgment of the trial court requires "Woody to treat J. Black's as a tenant in good standing, allow it to peacefully exist in the subleased space pursuant to the terms of the Sublease as executed, and not continuously demand holdover rent at an increased rate."

The equitable remedy of specific performance operates to compel a party violating a duty under a valid contract to comply with its obligations. *S. Plains Switching, Ltd. v. BNSF Ry.,* 255 S.W.3d 690, 703 (Tex.App.--Amarillo 2008, pet. denied). The rationale is, when the recovery of monetary damages is inadequate to compensate the complainant the transgressor is compelled to perform the promise of its contract. *Id.* (citing *Estate of Griffin v. Sumner,* 604 S.W.2d 221, 225 (Tex.Civ.App.-- San Antonio 1980, writ ref'd n.r.e.)).

completed on appeal, the first option period had expired. The issue whether the trial court's decree of specific performance was correct might thus be moot. *See United Coin Meter Co. v. Johnson-Campbell Lumber Co.,* 493 S.W.2d 882, 890-91 (Tex.Civ.App.--Fort Worth 1973, no writ) (appellate challenge of trial court's refusal to order specific performance of lease dismissed as moot because secondary term of lease expired while case was on appeal). But, because J. Black's award of attorney's fees is contested on appeal, and depends on the viability of the trial court's decree of specific performance, the issue is not moot. *See Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 642-43 (Tex. 2005) (appellee's remaining issue in recovering attorney's precluded application of mootness doctrine).

To obtain specific performance, a party must, among other things, plead and prove it was ready, willing and able to timely perform its obligations under the contract. *DiGiuseppe v. Lawler,* 269 S.W.3d 588, 593 (Tex. 2008). This means even though a defendant refuses to perform its contractual obligations, a plaintiff must show it could have performed its contractual obligations. *Id.* (citing *Corzelius v. Oliver,* 148 Tex. 76, 220 S.W.2d 632, 635 (1949)). "[T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement. The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter." *Id.* (quoting 25 Richard A. Lord, Williston on Contracts § 67:15, at 236-37 (4th ed. 2002) (citations omitted)); *Henry S. Miller Co. v. Stephens,* 587 S.W.2d 491, 492 (Tex.Civ.App.--Dallas 1979, writ ref'd n.r.e.) (noting a party seeking specific performance must at all times remain ready, willing and able to perform its contractual responsibilities according to the terms of the contract). Even in the face of repudiation of the contract by the defendant, a plaintiff seeking specific performance must demonstrate its own readiness, willingness and ability to perform on the date set by the contract if specific performance is to be decreed. *DiGiuseppe,* 269 S.W.3d at 593 (quoting Edward Yorio, Contract Enforcement: Specific Performance and Injunctions § 6.4, at 144-45 (1989) (citation omitted)); *Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 144 (1947) (where the plaintiff's performance is excused, the plaintiff "ordinarily is entitled to specific performance where he alleges and proves that he . . . is ready, able, and willing to perform"). *But cf. Jarvis v. Peltier,* No. 12-12-00180-CV, 2013 Tex. App. Lexis 5017, at * 20 (Tex.App.--Tyler Apr. 24, 2013, n.p.h.) (citing

*Burford,* 199 S.W.2d at 145, for rule it is enough on a seller's breach for a purchaser to merely plead readiness, willingness and ability to perform but also noting movant for summary judgment in that case stated his readiness, willingness and ability to perform in his summary judgment affidavit).

Here the primary term of J. Black's sublease expired on August 31, 2009. But the agreement afforded the sublessee an optional extension of the term. To do so, J. Black's was obligated to give timely notice of its intention to carry the sublease into the option term and be free of default under the sublease. While we have found J. Black's gave notice within the specified period, the question here is more focused, asking whether J. Black's summary judgment evidence conclusively establishes it was ready, willing and able to perform its obligations under the sublease.

Whether conclusive proof of J. Black's readiness, willingness and ability to perform its obligations under the sublease could be marshaled we do not say. Rather, this summary judgment record simply does not contain conclusive proof. We therefore sustain Woody's fourth issue, subpart (C). Our review of Woody's remaining arguments challenging the decree of specific performance is unnecessary to the disposition of this appeal. Tex. R. App. P. 47.1.

Attorney's Fees

The judgment awards J. Black's "attorney's fees under the terms of the parties' contract and under Tex. Civ. Prac. & Rem. Code § 38.001." We begin by noting, and J. Black's does not contend otherwise, the sublease does not provide a recovery of

attorney's fees for a prevailing party. Nor do the parties treat the master lease as a source for such relief.[4]

Thus J. Black's recovery of attorney's fees depends on the provision of Civil Practice and Remedies Code section 38.001(8) which authorizes recovery of such fees to a party asserting a "valid claim" on a written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8) (West 2008). A valid claim under section 38.001(8) includes a claim for the recovery of monetary damages as well as any claim for which a party recovers "at least something of value." *Albataineh v. Eshtehardi,* No. 01-12-00671-CV, 2013 Tex. App. Lexis 5406, at *3-4 (Tex.App.--Houston [1st Dist.] May 2, 2013, no pet.). An injunction enforcing specific performance of a contract is something of value. *Id.*

Citing *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 391 (Tex. 1997), Woody argues J. Black's is not entitled to recover attorney's fees under § 38.001 because it was not awarded monetary damages. There the plaintiff sought but did not recover damages for breach of a subcontract. *Id.* But in the present matter J. Black's was not denied monetary damages for breach of the sublease. Instead it sought an equitable decree. *Solis* is inapposite.

Nonetheless J. Black's is not entitled to recover attorney's fees under section 38.001(8) since it did not present conclusive proof entitling it to a summary judgment decreeing specific performance. *See Roundville Partners, L.L.C. v. Jones,* 118 S.W.3d 73, 82 (Tex.App.--Austin 2003, pet. denied) (when a purchaser is denied specific

---

[4] The master lease provides a prevailing signatory may recover attorney's fees in a "legal proceeding" brought against another signatory. J. Black's is not a signatory of the master lease.

performance it may not recover attorney's fees under section 38.001 as it is not a prevailing party).

We sustain Woody's fourth issue, subparts (G) and (H). Having found the trial court erred by decreeing specific performance as a matter of law and awarding J. Black's attorney's fees under section 38.001(8), we need not address Woody's remaining subissues under its fourth issue. Tex. R. App. P. 47.1.

Sanctions

By their fifth issue, Woody and his counsel Cardenas contend the trial court abused its discretion by imposing a monetary sanction on them under Rule 13[5] and Chapter 10.[6]

Woody filed a motion for partial summary judgment on November 11, 2011, which J. Black's charged in a response and motion for sanctions merely rehashed issues previously resolved by partial summary judgment. Particularly, according to J. Black's, Woody's:

> Motion asserts untimely affirmative defenses, recycles briefing that Judges Triana, Rose and Dietz have already found unpersuasive, and seeks judgment on claims that have long-since been resolved in J. Black's favor in prior summary judgment proceedings. The Motion was filed purely for purposes of harassment and to drive up the cost to J. Black's of obtaining a final resolution of this case.

The trial court denied Woody relief on its motion for summary judgment and signed an order imposing a monetary sanction of $6,958 against Woody and Cardenas.

---

[5] Tex. R. Civ. P. 13.

[6] Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001-.005 (West 2002).

The court found Woody's motion for summary judgment "was filed in violation of Texas Rule of Civil Procedure Rule 13 and Texas Civil Practice and Remedies Code section 10.001, and was filed by [Woody] and their counsel to harass [J. Black's] and to cause unnecessary delay, and that [Woody's] Motion for Summary Judgment has caused a needless increase in the cost of litigation." In a handwritten finding the court added, "In addition the motion sought rulings that would be contrary to prior rulings of the court, by two different District Judges, and was not presented to them as a motion to reconsider."

Rule 13 provides sanctions for a party filing a pleading that is groundless and brought in bad faith or groundless and brought to harass. Tex. R. Civ. P. 13. A party seeking the imposition of sanctions under Chapter 10 must demonstrate the pleading or motion was brought for an improper purpose, there were no grounds for the legal arguments advanced, or the factual allegations or denials lacked evidentiary support. *Armstrong v. Collin County Bail Bond Bd.,* 233 S.W.3d 57, 62 (Tex.App.--Dallas 2007, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (West 2002).

Our review of a trial court's order imposing sanctions under Rule 13 and Chapter 10 is for abuse of discretion. *Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion if it acts without regard to guiding rules and principles of law, such that its ruling is arbitrary or unreasonable. *Id.* The legal sufficiency of evidence heard by a trial court is a relevant factor in assessing whether it abused its discretion in imposing sanctions. *Armstrong,* 233 S.W.3d at 62 (citing *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991)). As fact finder, the trial court is entitled to evaluate the credibility of the testimony and determine what weight to give it. *Wein v. Sherman,* 03-10-00499-CV, 2013 Tex. App. Lexis 10666, at *24 (Tex.App.--Austin Aug.

15

23, 2013, n.p.h.) (mem. op.) (citing *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 412 (Tex.App.--Houston [1st Dist.] 2005, pet. denied)).

Concerning the imposition of a sanction under Rule 13 and Chapter 10, Woody and Cardenas argue the trial court abused its discretion by not conducting an evidentiary hearing to consider their subjective state of mind. For the purposes of Chapter 10 and Rule 13, courts presume pleadings, motions, and other papers are filed in good faith. *Thottumkal v. McDougal,* 251 S.W.3d 715, 718 (Tex.App.--Houston [14th Dist.] 2008, pet. denied) (adopting the same presumption when reviewing a sanctions award under Chapter 10). The party moving for sanctions bears the burden of overcoming this presumption. *Canada v. Canada,* 02-11-00483-CV, 2013 Tex. App. Lexis 5138, at *21-22 (Tex.App.--Fort Worth Apr. 25, 2013, n.p.h.) (mem. op.) (citing *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex. 1993) (orig. proceeding)).

Woody's motion for summary judgment and J. Black's motion for sanctions were heard on November 21, 2011, apparently in the course of a single hearing. But the appellate record does not contain a reporter's record of that November 21 hearing. The reporter's record of a hearing conducted in January 2012 reflects a comment by the trial court referring to an event that occurred at "the sanctions hearing." We thus infer the trial court considered the proceedings that occurred on November 21 fit that description.

J. Black's argues that because the appellate record does not include a reporter's record of a sanctions hearing we must presume the court heard evidence sufficient to support the sanctions award. In this case, we disagree. While J. Black's attached

affidavit evidence to its motion for sanctions and the trial court's order recites it considered evidence, neither party asserts the court received evidence at the November 21, 2011 hearing, nor do we find other indication in the record of an evidentiary "sanctions hearing." In this circumstance, we must limit our evaluation of the evidence supporting the sanctions award to that appended to J. Black's motion.[7] *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 783 (Tex. 2005) (only when proceedings indicate an evidentiary hearing was held must complaining party present a record of that hearing to establish harmful error).

While J. Black's motion showed Woody's October 2011 motion for summary judgment asserted grounds addressed by prior interlocutory orders, its evidentiary content did not demonstrate the subjective intent of the movant Woody or his attorney Cardenas. *See, e.g., Zeifman v. Nowlin,* 322 S.W.3d 804, 810-11 (Tex.App.--Austin 2010, no pet.) (outlining evidence supporting sanctions under Rule 13).[8] We must conclude the trial court acted without evidence supporting the assessment of a sanction under Rule 13 or Chapter 10 against Woody and Cardenas, and thus abused its

---

[7] J. Black's contends the trial court could have taken judicial notice of the contents of its file. According to the record of the January 2012 hearing, the trial court took judicial notice "of the entire file" for determination of a matter other than the imposition of sanctions. Otherwise, J. Black's does not point to an indication in the record of judicial notice taken for establishing sanctionable conduct, nor does it explain how even the entire contents of the clerk's record would have met the evidentiary requirements to support sanctions.

[8] The Austin Court of Appeals, in whose district this case originated, has held that "awards of attorney's fees under the Civil Practice and Remedies Code require essentially the same findings as does rule 13." *Zeifman v. Michels,* No. 03-12-00114-CV, 2013 Tex.App. Lexis 10523, at *30 (Tex.App.--Austin Aug. 22, 2013, n.p.h.) (mem. op.) (citing *Lake Travis Indep. Sch. Dist. v. Lovelace,* 243 S.W.3d 244, 256 (Tex.App.--Austin 2007, no pet.)).

discretion by doing so. *See Armstrong,* 233 S.W.3d at 62. We sustain Woody's fifth issue.

## Conclusion

The trial court correctly found that J. Black's gave timely notice of its intention to carry the sublease into the first option period. The court erred, however, in finding evidence J. Black offered in support of its claim for specific performance of the sublease to be conclusive. The award of attorney's fees predicated on Civil Practice and Remedies Code section 38.001 was also error. Finally, the trial court abused its discretion by imposing a sanction on Cardenas and Woody under Rule 13 and Chapter 10. We therefore affirm the judgment of the trial court in part and otherwise reverse the judgment and remand the case for further proceedings consistent with this opinion.


James T. Campbell
Justice


Pirtle, J., concurs as to the disposition of Issues One through Four, but dissents as to the disposition of Issue Five, without opinion.