**TEXAS CONSOLIDATED THEATRES, Inc., v. SLAUGHTER.**

No. 2027.

Court of Civil Appeals of Texas. Eastland.
July 15, 1940.

Rehearing Denied Sept. 20, 1940.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellant.

John F. Evans, of Breckenridge, and Levy & Evans, of Fort Worth, for appellee.

LESLIE, Chief Justice.

Hiram B. Slaughter filed this suit against Texas Consolidated Theatres, Inc., to recover damages sustained by him and alleged to be the proximate result of defendant's negligence. The defendant entered a general denial and alleged special defenses. The cause was tried before the court and jury, and, upon the jury's answers to many issues judgment was rendered for the plaintiff. The parties will be referred to as in the trial court.

The correctness of the judgment is challenged by various assignments of error, but the first two are believed to be controlling. These are to the effect (1) that the court erred in not granting the defendant's motion for a peremptory instruction in its favor, and (2) thereafter refusing to grant the defendant's motion for judgment notwithstanding the verdict. A consideration of the assignments of error requires a statement in substance of the nature and origin of the litigation.

The plaintiff alleged that about night on the evening of September 19, 1938, he, in company with his wife and small child, attended the defendant's motion picture show in Breckenridge; that at the end of the show and while proceeding out through the east exitway of the defendant's theater building he stumbled and fell on a wooden ramp or runway which was lying upon the floor in the center of the exitway, thereby seriously and permanently injuring himself in many ways. On this point the plaintiff in his trial pleading (second amended original petition) alleged: "In this connection plaintiff alleges that said wooden runway in which plaintiff stepped was owned by the defendant and was placed by an employee of the defendant, acting in the course of his employment and in the scope of his employment with the defendant, on the floor of said east exit way after plaintiff and his wife and child entered said theater and before the plaintiff stepped into same-while leaving said theater." There are other grounds of negligence alleged, such as insufficient lighting and the failure of some employee of the defendant to guard "the east exit way of the theater during the operation of putting up said pop corn machine." The above excerpt from plaintiff's pleading reflects the real basis of plaintiff's alleged right of recovery. Since he seeks to establish such right largely, if not altogether, by circumstantial evidence, we have found it necessary to study the testimony as a whole.

The plaintiff was accustomed to attending this picture show and was familiar with the building. The ramp over which he stumbled was used as a "rest for the pop corn machine" when the latter was stored away and not in use. Its real pur-

pose was to protect the rug or linoleum on which the pop corn machine would otherwise have rested. The ramp was about 30 inches long, about 25 inches wide on the outside, and the two runners were connected with three 1 x 4's. Exhibit 8 in the evidence reflects a picture of the ramp. When not in use it was kept in a little closet to the west of the exitway. When in use it was in a north-south direction with the pop corn popper rolled upon it. The popper was so stored away each night about 9:30.

On leaving the picture show on the night of the alleged accident, the plaintiff started out the east exitway. His testimony is that no employee of the show, or anyone else, was standing about; that on his way through the exit he fell; that the fall was due to his stumbling onto or getting his feet tangled up in said ramp or runway then lying in the center of the exit and which he did not at first discover; that he stumbled practically to his knees and for some distance toward the pop corn machine then at its usual place near the sidewalk; that he recovered himself within a foot or two of the pop corn machine; that at that point his wife helped him up and he looked to see who it was rendering him that assistance; that he then looked back and could see all but one side of the ramp over which he had stumbled; that he also saw a man out on the sidewalk but that he would not say that he was an employee of the defendant.

The plaintiff further testified that he never told Mr. Hughes, the manager of the show, that he had had an accident and that he never told anyone connected with the theater that he had fallen in the exitway as he retired therefrom. That he did not know who put the ramp or runway in the exitway or how it came to be in that position; that he did not mean to tell the jury that any employee put the runway there; that he did not know who put it there; that he did not see anyone take it out of the closet and put it down at the point where he stumbled over it. That while he did not see who put it down, nevertheless he had alleged in his petition that an employee of the defendant placed it at the point where he stumbled over it. He also testified that he did not try to find any employee of the theater the night of the accident and notify him that he had had an accident. That

there was no one there to see; that while he did look around, he did not go back on the inside and look for an employee and that he had not tried to do so from the time of the accident until the time of giving this testimony.

It is the testimony of Mr. Hughes, the manager of the theater, that his first information that the accident of September 19, 1938, had occurred was received about October 30 from plaintiff's doctor who was teasing him about some phase of it at a luncheon.

The plaintiff's wife testified, in substance, the same as her husband. She stated that she followed her husband out of the theater; that she did not stumble over the ramp and did not see it. That after he had stumbled she turned around and looked back and saw the ramp "partly in the lobby and partly in the exitway"; that she was right immediately back of him; that she did not go back to examine the nature of the lights, etc. That when she got out of the show there was a boy standing out on the sidewalk close to the pop corn machine, but that she did not see any employee of the theater around there at the time, and she did not know whether the boy standing on the sidewalk was an employee of the theater company or not. There was also introduced in evidence the following allegation from the plaintiff's (abandoned) original petition: "The plaintiff alleges that the defendant, its agents, servants and employees were guilty of negligence in placing said lattice runway at a place where the same would fall to the floor of said exitway or be knocked to the floor of said exitway by some employee of the defendant or patron of its theater." According to the plaintiff's testimony the runway, at the time of the accident, was not in the position to serve the purpose for which it was intended or invariably used by the employees, but was out in the exitway turned in an east-west direction, the opposite direction to which it would have been had it been in the usual place, and in proper position to be used as a rest for the pop corn machine. Further, the machine could not have been conveniently rolled upon the runway turned in the east-west direction, according to the testimony.

The plaintiff and his wife testified that, on entering the show, they did not see the ramp or any obstruction in the en-

trance or exitway. Sometime after the accident he and his wife and lawyer went to the theater and personally saw where the ramp or runway was kept in a little closet on the west wall of the exitway.

The plaintiff called a number of witnesses, among them practically all of the employees of the defendant at the time. They were closely interrogated upon the issues of alleged primary negligence. Viewing all the testimony from the standpoint of the plaintiff, we are of the opinion that there is no evidence that the ramp or runway was placed in the exit of the theater by the defendant, or any of its employees, as alleged by the plaintiff, or that they knew of its presence in the exitway. There is no evidence as to who placed the ramp in the exit, or how long it had been there. Certainly there is no evidence that the runway had been in that position long enough to justify any inference that a failure to discover and remove same was due to a want of proper care on the part of the defendant or its employees. If there be any statement tending to establish the negligence alleged, we are quite certain that it amounts to no more than a scintilla of evidence, and, therefore, must be regarded as no evidence at all. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The closet was not kept locked and persons and patrons other than the employees had access to it. Such persons commonly deposited parcels, traveling bags and sometimes groceries in the closet while they were looking at the picture. Having such access to the closet it is just as inferable that some person, other than defendant's employees, carelessly moved the ramp or accidentally knocked it from its leaning position in the closet adjacent to the exitway, as that an employee or servant of defendant did so, or intentionally placed it where the plaintiff alleges he stumbled over the same.

It is a well-recognized rule of law that negligence can only be predicated upon knowledge, actual or constructive, and under our interpretation of the testimony bearing upon the points under consideration we think the case is ruled by the following well-known authorities, some of which are by this court: Great A. & P. Tea Co. v. Logan, Tex.Civ.App., 33 S.W. 2d 470; Texas & P. Ry. Co. v. Howell, Tex.Civ.App., 117 S.W.2d 857; Safeway Stores, Inc. v. Miller, Tex.Civ.App., 110 S.W.2d 927; Burke v. State Fair of Texas, Tex.Civ.App., 93 S.W.2d 765; Osborne v. Loew's Houston Co., Tex.Civ. App., 120 S.W.2d 947; Montfort v. West Texas Hotel Co., Tex.Civ.App., 117 S.W. 2d 811, writ refused; Vernon Cotton Oil Co. v. Jones, Tex.Civ.App., 137 S.W. 424; Knowles v. Great A. & P. Tea Co., 287 Mass. 400, 192 N.E. 2; Winslow v. Missouri, K. & T. Ry. Co., Mo.App., 192 S.W. 121, and the authorities cited in said opinions.

Further, and on the other issues of negligence, namely, insufficient lighting and failure to guard the exit, etc., while the pop corn machine was being put up, we find the record equally lacking in testimony to support the same. Bearing in mind the nature of the defendant's business and the proper lighting incident to the entrance and exit of a picture show, we do not believe that the testimony taken as a whole puts the defendant in default in that respect as regards any duty then owed the plaintiff or a patron of the show. The lighting was necessarily graduated and the testimony does not show that the construction of the theater building departed in any way from that which is usual and proper in such structures. According to the testimony of the plaintiff and his wife, the pop corn machine was out on, or near, the sidewalk of the street, or at the usual place of operation during business hours and was not in the process of being put up. Neither the plaintiff nor his wife identified any employee of the defendant thereabout, nor did they endeavor to call attention to anyone to the fact that an injury had been sustained by plaintiff. These assignments are also overruled for the same fundamental reasons as those first stated above and on that authority.

Perhaps this is all that should be said in the disposition of this appeal, but we are further of the opinion that the fourth assignment of error should also be sustained. That assignment is based upon the action of the trial court in overruling an exception to the charge or manner of submitting an issue. The exception is as follows: "The defendant objects to the submission by the court to the jury of special issue No. 32, because the evidence raises the issue that a part of the plaintiff's mental and physical suffering, if any, was attributable to some prostate trouble,

and a congenital condition of his back, or a lateral curvature thereof, which had no connection with the accident in question, and the court should instruct the jury in connection with special issue No. 32 not to consider nor allow plaintiff anything for physical or mental suffering, or loss of earning capacity in the past, because of so much of the prostate trouble and congenital deformity, or condition of his back, if any, that the plaintiff had, which was not an aggravation by the accident in question."

■ The testimony is that the pain, suffering and injury attributable to the prostate trouble and the congenital condition are in no way attributable to the injuries sustained by the plaintiff in the alleged accident. The pain in his back attributable to the prostate trouble, etc., is similar and possibly of like severity to that attributable to the injury sustained in the accident. We have carefully read the testimony and we think the injury and suffering, if any, sustained by the plaintiff when he stumbled and fell is so intermingled with the suffering and pain that might well be due to pronounced prostate trouble and congenital condition that the court should have told the jury to eliminate from the verdict and disregard suffering, pain, etc., due to such prostate gland trouble or congenital condition. The defendant was entitled to an affirmative exclusion of such elements of damage, if any. In failing to do so, we think the court committed the same error dealt with in Dallas Ry. & T. Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683 (pts. 7 and 8); and Texas Coca-Cola Bottling Co. v. Lovejoy, Tex.Civ.App., 138 S.W.2d 254 (pts. 6, 7, and 8), writ refused. Upon these authorities and those cited in each opinion, the judgment of the court would have to be reversed in any event.

The appellee has presented an excellent brief but under the interpretation we give the testimony his authorities are not controlling.

Under the circumstances of the case we have concluded that the ends of justice will be better subserved by reversing the judgment and remanding the cause, and it is so ordered.

On Rehearing.

In the light of the motions for rehearing by both the defendant and plaintiff, the various contentions presented by the appeal have been re-examined. We are still of the opinion that we correctly sustained the propositions requiring a reversal of the judgment of the trial court; but a further study of the record convinces us that the judgment of the trial court should not only be reversed but that the judgment should be here rendered for the defendant rather than a remand of the cause for another trial. Such order will be substituted for the closing sentence and order of the original opinion.

■ We are moved to render the judgment for the following reasons: (1) This case has been fully developed and the plaintiff himself makes no contentions to the contrary. (2) The case was not tried upon any erroneous theory, sometimes spoken of as "excusable error", under some state of the authorities apparently accepted by the court of last resort. (3) In the instant case no ruling of the trial court on exceptions to pleadings, admission of testimony, etc., misled the plaintiff in matters of pleading or caused him to forego the offering of any available material testimony essential to a full development of the cause in the trial below. In other words, no such considerations render it necessary that the cause be remanded, that the pleadings be amended, or for the ascertainment of any matter of fact.

Such being the record a rendition of the judgment is believed to be required in obedience to such authorities as Williams v. Safety Cas. Co., 129 Tex. 184, 102 S.W.2d 178; Fowler v. Hardee, Tex.Civ.App., 16 S.W.2d 154; 3 Tex.Jur. p. 1215, sec. 852; p. 1218, sec. 853.

For these and the reasons assigned in the original opinion the judgment of the trial court is reversed and the judgment now rendered in favor of the defendant. The judgment heretofore entered June 21, 1940, will be set aside and this one entered therefor. Accordingly the judgment is reversed and rendered in favor of appellant.