CITY OF FORT WORTH, Appellant,

v.

George Edward SATTERWHITE et ux., Appellees.

No. 16048.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 20, 1959.

Rehearing Denied Dec. 18, 1959.

peared Tom Cave, attorney and agent for the within named injured and damaged persons, who, after being duly sworn upon his oath deposes and says: My name is Tom Cave and I am the attorney for (appellees) * * * and am authorized to make this affidavit." The above was signed by Cave and his signature was followed by the notary's certificate. In our view the reasonable construction of the above is to the effect that Cave was swearing to the notice and not merely to the fact that he was appellees' attorney, as contended by the city.

In answer to issues Nos. 3, 4, 5 and 6 the jury found that plaintiffs entered the intersection before the city's truck entered the same; the city's driver failed to yield the right of way; such failure was negligence and a proximate cause of the collision.

In five points of error appellant contends there was no evidence and insufficient evidence to support the answers of the jury to the above issues. The record discloses that the issues were submitted in accordance with the pleadings and that the findings of the jury were supported by the evidence. The points of error are overuled.

The accident occurred on March 10, 1958. Mrs. Satterwhite was thrown forward and her right shoulder was injured as a result of striking the glove compartment of the vehicle. On April 29, Mrs. Satterwhite went to Dr. Van Zandt for treatment. Dr. Van Zandt, called as a witness by plaintiffs, testified: " * * * she had suffered a fairly complete tear of some of the ligaments of her shoulder, the ligaments that connected the upper end of the humerus or arm bone to three muscles around the shoulder that would pull it away from the side, * * * we call this the rotater cuff. * * * I told her that ordinarily this condition was best treated with a support, to support the shoulder while this tendon or while these ligaments were getting well. The ligaments will heal if the two ends are brought back together and

R. E. Rouer, S. G. Johndroe, Jr., Robert R. Goodrich, Martin Siegmund, Earl Morgan, James Price and G. Gordon Whitman, Fort Worth, for appellant. .

Spurlock, Schattman & Jacobs, and Kelly Jacobs, Fort Worth, for appellees.

RENFRO, Justice.

Appellees Satterwhite and wife recovered judgment against the City of Fort Worth for personal injuries sustained in an intersection collision between the appellees' pickup truck and a city dump truck.

In its first point of error appellant contends the notice filed with the City Council failed to comply with a provision of the city charter requiring such notice to be duly verified. The notice was filed within the time provided by the charter and was sufficient to give the city all the information needed as to the accident and claimed damages. As a part of the instrument there appeared the language: "In accordance with the above, before me the undersigned authority personally ap-

allowed to stay in contact. Nature will give usually a very satisfactory type of healing. A portion of these ligaments had retracted up under this bone on the top of the shoulder, the acromion, and to get that down in contact with the remainder of the ligament we would have to go in and make an incision and pull them down. Well we have found by putting the arm in what we call an airplane splint we can still approximate the ends of the ligaments without having to expose them and perform a surgical operation. It usually works out very satisfactorily if a person wears this splint for about three weeks. * * * I advised her that this should be carried out and in all probability it would result in a good healing and good usage of the member afterwards." He further testified that wearing an airplane splint for three weeks would work a 100% cure for a housewife, sometimes it took longer than three weeks, sometimes less, but three weeks "is probably a good average." She returned to Dr. Van Zandt on May 2 and had gotten a splint to fit her satisfactorily. She again returned on the 7th and informed the doctor she had not been able to wear her support all the time because of certain responsibilities, that she worked in a cafeteria and could not work with a splint. At that time she was beginning to get a little healing. He told her to return in ten days but she did not return until May 28. At that time he learned that she was not wearing the splint as instructed; whereupon the doctor told her that as long as she was not able to wear the splint there was no use of her coming back, she was wasting her time and his.

Dr. Van Zandt's testimony was uncontradicted.

Mrs. Satterwhite testified she did not wear the splint because it interfered with her work as manager of a cafeteria, that she received $65 per week and would not receive any pay if she did not work; that she needed to work because her husband, subsequent to the accident in question, fell off a ladder and broke his leg; even before her husband broke his leg she had ceased

to wear the brace except in the evenings; after her husband went back to work she' could have taken time off to get her arm treated but they were heavily in debt and she had to continue working; as of the date of the trial, in December, the condition of her shoulder had not improved.

In its answer appellant plead that Mrs. Satterwhite negligently failed and refused to conduct herself with respect to such injuries as a person of ordinary prudence would have done under the same or similar circumstances, and negligently failed and refused to obtain proper medical attention for such injuries or to follow competent medical advice with respect to such injuries.

Prior to the submission of the case to the jury the appellant requested the court to instruct the jury that Mrs. Satterwhite could not recover damages which could have been avoided by submission to medical treatment or by the following of competent medical advice when under similar circumstances a person of ordinary prudence would have submitted to such treatment and would have complied with such advice in his own interest.

Along with the issue concerning Mrs. Satterwhite's injuries, the court enumerated the elements which might be considered but there was no instruction to the jury not to allow damages, if any, which could have been avoided by submitting to reasonable treatment, in this instance, wearing the splint.

It is well settled by many decisions that a mere recital of the elements which a jury may take into consideration in estimating damages is not sufficiently specific to amount to an instruction to the jury not to consider improper elements raised by the evidence and closely intermingled with proper elements. Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266; Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S. W.2d 683; Texas Coca-Cola Bottling Co. v. Lovejoy, Tex.Civ.App., 138 S.W.2d 254; City of Beaumont v. Wiggins, Tex.Civ.App., 136 S.W.2d 260; Texas Consolidated Thea-

tres v. Slaughter, Tex.Civ.App., 143 S.W.2d 659; Burlington-Rock Island R. Co. v. Ellison, Tex.Civ.App., 134 S.W.2d 306; Nehi Bottling Co. v. Patton, Tex.Civ.App., 142 S.W.2d 900.

Where the circumstances disclosed are such as to give rise to a contention that the plaintiff ought to have prevented in whole or in part the loss or injury for which he seeks recovery, the jury should be instructed as to his duty to have prevented or diminished damages. Texas Utilities Co. v. Dear, Tex.Civ.App., 64 S.W.2d 807; Thompson v. Quarles, Tex.Civ.App., 297 S.W.2d 321; 13 Tex.Jur., p. 547, sec. 336, and cases cited.

Ordinarily what a person of ordinary prudence would do under stated circumstances is a question of fact for the jury. From all the evidence it seems apparent to us that the requested instruction should have been given.

The judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.