**Opinion filed September 29, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00206-CV

_____

## GREAT WESTERN DRILLING, LTD., Appellant

## V.

## PATHFINDER OIL & GAS, INC. AND CATHLIND ENERGY, LLC, Appellees

### On Appeal from the 142nd District Court
### Midland County, Texas
### Trial Court Cause No. CV-45,031

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a dispute over whether a contract to participate in an oil and gas lease existed between Great Western Drilling, Ltd. and Pathfinder Oil & Gas, Inc.[1]  Great Western sought a declaratory judgment that a letter dated June 1,

---

[1]We note that Pathfinder's successor in interest is Cathlind Energy, LLC and that the trial court referred to Pathfinder and Cathlind interchangeably.  In this opinion, we refer to both as Pathfinder.

2004, was unenforceable as a contract. Pathfinder counterclaimed, and alleged that the letter resulted in a contract and that Great Western had breached the contract, and Pathfinder sought specific performance.

After a trial, the jury found (1) that the letter was an enforceable contract between the parties and (2) that Great Western breached that contract. As a result, the trial court granted Pathfinder's requested relief of specific performance and ordered Great Western to fulfill its part of the contract, namely, to convey to Pathfinder a 25% working interest in the oil and gas lease. The trial court also ordered Great Western to pay the net proceeds of that interest, $3,053,023.40, to Pathfinder and to pay Pathfinder's attorneys' fees. In this appeal from that adverse judgment, Great Western asserts three issues. We reverse and render judgment that Pathfinder take nothing.

## I. *Background Facts*

Great Western and Pathfinder were participants in several oil and gas prospects in Hockley County; the parties had a joint operating agreement (the Latigo JOA) among themselves and other parties for those areas of mutual interest. Seismic data indicated that an area outside the area of mutual interest could be profitable, and Great Western acquired leases for itself in the new area.

On June 1, 2004, Great Western sent a letter to Pathfinder and offered it a 25% working interest in the new leases it acquired from "CH Foundation, et al" and asked Pathfinder to reply to its offer within forty-eight hours. Within the 48-hour time frame, Pathfinder checked an "elects to participate" box on the letter, signed it, and returned it to Great Western. The letter purported to give Pathfinder a 25% interest but stated that (1) the working interest included any obligations that Pathfinder might owe to third parties (the Kennedys) and that (2) Pathfinder could not assign any portion of the interest to anyone other than the Kennedys without Great

2

Western's written consent. The letter further provided that Great Western would bill Pathfinder for its share of the costs associated with drilling and that the details of a participation agreement for these leases would be worked out "as soon as reasonably possible."

Later, Great Western and Pathfinder disagreed on several issues. First, Pathfinder attempted to renegotiate the working interest offered from 25% to 28%, but that was not approved by Great Western's management.

Next, there were disputes between the parties over the joint operating agreement (JOA) and the Authorization for Expenditure (AFE) documents that Great Western created and asked Pathfinder to sign. In the June 1 letter, Great Western promised to draft a JOA and to provide Pathfinder with one, but Great Western did not give the JOA and AFE to Pathfinder until September 20. Pathfinder did not sign and return the documents. A second copy of the AFE was forwarded to Pathfinder on October 6, 2004.[2] Pathfinder did not sign the documents until October 29.

Finally, Pathfinder disagreed over the meaning of consent on assignments, as outlined in the June 1 letter. The June 1 letter required that Pathfinder obtain Great Western's consent before Pathfinder assigned or sold any portion of its interest. Great Western expanded this right in the proposed JOA sent to Pathfinder on September 20, which gave Great Western a preferential right to purchase that interest in the event of Pathfinder's attempted assignment.

In an attempt to resolve these disputes, Great Western's representatives, Carter Muire and Mike Heathington, and Pathfinder's representative, Ted Ashford, had a conference call on October 28; they did not reach an understanding. At trial, Muire and Heathington testified that Heathington withdrew Great Western's offer at

---

[2]The letter is incorrectly dated October 6, 2005; the correct and true date was October 6, 2004.

the end of the call because the parties could not agree on the disputed issues: the JOA, the AFE, and the working interest amount. Ashford, on the other hand, did not recall Great Western's withdrawal during this conference call. The following day, Great Western sent a withdrawal letter to Pathfinder. Meanwhile, according to Ashford's testimony, he sent Great Western the required check, the signed JOA, and the signed AFE.

Great Western brought suit seeking a declaratory judgment that the June 1 letter was not an enforceable contract. In response, Pathfinder counterclaimed and alleged that Great Western had breached the June 1 contract.

Prior to trial, the parties entered into a stipulation. The stipulation provided that Pathfinder had to prove that Great Western had an enforceable contract and that Great Western breached the contract. The stipulation also outlined that, if Pathfinder proved that it was entitled to recover from Great Western's breach, then its remedy would be specific performance. The stipulation also specified in paragraph (d) that, if the jury finds that Pathfinder is entitled to recover for Great Western's breach, Great Western would provide two accountings: one for out-of-pocket expenses, done in accordance with COPAS accounting procedures, and another one for revenue received by Great Western. Paragraph (f) of the stipulation further required that Great Western provide a simple calculation of the revenue and expenses, as listed in paragraph (d), from inception to the most recent accounting period before trial. Once that was provided to Pathfinder, Great Western would forward the representative proceeds in the amount of Pathfinder's 25% interest for all historical production within 15 days of the judgment, subject to any appeal and bond.

At trial, Great Western asked the trial court to submit a jury question on whether Pathfinder met the "ready, willing, and able" element of specific performance in the event that the jury found a breach; however, the trial court refused

4

to submit this question.  The jury found that the June 1 letter was an enforceable contract and that Great Western breached that contract.  The trial court entered judgment in Pathfinder's favor, and this appeal followed.

## II. *Analysis*

In its first issue, Great Western contends that the trial court erred when it failed to grant Great Western's motion for judgment notwithstanding the verdict because (1) conditions precedent to the formation of a contract had not been satisfied; (2) the offer was withdrawn prior to the acceptance; and (3) there was insufficient evidence to support an enforceable contract.  In its second issue, Great Western argues that, even if a contract existed, the trial court's order of specific performance was improper because Pathfinder failed to demonstrate that it was ready, willing, and able to fulfill its contractual obligations.  Finally, Great Western asserts in its third issue that the trial court improperly awarded damages and prejudgment interest to Pathfinder because the award violated the parties' stipulation and because the evidence did not support the award.  Because the resolution of Great Western's second issue is dispositive, we begin there.

> A. *Issue Two:* *The trial court erred when it refused to submit a jury question on specific performance because the stipulation provided that if Pathfinder was entitled to recover for Great Western's breach, then its remedy was specific performance.*

In its second issue, Great Western argues that the trial court erred when it denied Great Western's request to submit a jury question concerning Pathfinder's readiness, willingness, and ability to perform the obligations of the contract. Pathfinder asserted that the stipulation eliminated the need for that question because the stipulation only required Pathfinder to prove that an enforceable contract existed and that Great Western had breached it.

5

We review a challenge to the trial court's jury charge under an abuse of discretion standard. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles. *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 522 (Tex. App.—Eastland 2015, pet. denied) (citing *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003)). Given the parties' differing positions on the effect of the stipulation, we must first ascertain the meaning of the stipulation.

We interpret a stipulation the same way that we interpret a contract because a stipulation constitutes a contract. *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 143 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.). We apply the rules for interpreting contracts to the interpretation of stipulations. *Fid. & Cas. Co. of N.Y. v. Horton & Horton Custom Works, Inc.*, 462 S.W.2d 613, 618 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.). We construe contracts as a whole and use an interpretation that gives effect to every part of the agreement so that no provision is rendered meaningless. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003). We apply a de no review to a trial court's interpretation of an unambiguous contract. *See Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 809–10 (Tex. App.—Fort Worth 2006, pet. denied).

Pathfinder argues that, in accordance with paragraph one, it only had to prove the existence of a contract and a breach by Great Western. Paragraph one of the stipulation provided:

> 1. At the trial of this cause, which is currently set for December 2, 2013, the only issues that will be submitted to the Court and/or jury will be (a) whether the June 1, 2004 Letter Agreement between Great Western Drilling, Ltd. ("Great Western") and Pathfinder Oil & Gas,

Inc. ("Pathfinder") (the "Letter Agreement") is an enforceable agreement; (b) whether Great Western or Pathfinder breached the Letter Agreement; and (c) Great Western's affirmative defenses of estoppel, failure of consideration, statute of frauds, mutual mistake, anticipatory repudiation, unclean hands, material breach and revocation. . . .

Pathfinder's position is that the meaning of the agreement is clear and unambiguous and that, in it, the parties stipulated that Pathfinder did not have to prove that it was ready, willing, and able to perform because the overall remedy of specific performance was stipulated.

The elements that Pathfinder refers to in paragraph one are part of the four elements of a breach of contract claim, namely: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ). In contrast, specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). "Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." *Id.* (citing *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied)). The remedy of specific performance is purely equitable in nature and is governed by the general rules that prevail in the administration of equitable remedies. *Ferguson v. von Seggern*, 434 S.W.2d 380, 384 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.).

We further note that, in paragraph three, the stipulation provided:

3. In the event that the Court or a jury finds that the Letter Agreement is an enforceable agreement, that Great Western breached

7

the Letter Agreement, and that Pathfinder *is entitled to recover for Great Western's breach*, the following will control . . . .

(Emphasis added).

When we review a contract, our goal is to determine the parties' true intentions as expressed in the instrument. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We do not read any provision in isolation, but consider each provision with reference to the whole. *See id.* If the language in the contract can be given a definite legal meaning or interpretation, then it is not ambiguous and we will construe the contract as a matter of law. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). A contract is ambiguous if, after applying the principles of contract construction, it is subject to more than one reasonable interpretation. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

In this case, the stipulation provides that Pathfinder had to prove the first and third elements of a breach of contract action and that it had to show that it was entitled to relief as a result of the breach, which encompasses not only a causation element but also the element that it was ready, willing, and able to perform its contractual obligations. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 596 (Tex. 2008). We do not read the clear and unambiguous language of the stipulation to obviate elements two and four of Pathfinder's breach of contract claim, and we agree with Great Western that the parties' stipulation provided that if Pathfinder proved there was an enforceable contract, proved a breach, and proved *it was entitled to recover* because of Great Western's breach, then Pathfinder's sole remedy was specific performance. The stipulation might have limited recovery to specific performance, but the stipulation did not obviate the necessity that Pathfinder prove

8

its entitlement to it. Therefore, even if we assume, without deciding, that Pathfinder proved an enforceable contract with Great Western and proved a breach of that contract by Great Western, Pathfinder had the burden to plead and prove all of the elements of the remedy of specific performance. *Id.*

Great Western asserts that the issue of whether Pathfinder was ready, willing, and able to perform the contract was a contested fact issue that should have been submitted to the jury. If the parties present a factual dispute on the element of "ready, willing, and able to perform," then the jury must resolve that issue. *Id.* Great Western argues that Pathfinder was not ready, willing, and able because Pathfinder (1) continued to renegotiate its working interest; (2) failed to denounce any interest that a third party, the Kennedys, might have in the underlying agreement; and (3) was experiencing a cash shortage.[3] Pathfinder asserts that, under the terms of the stipulation, it only had to prove an enforceable contract and a breach—the stipulation provided that it was entitled to specific performance.

Determining whether a party is "ready, willing, and able" to tender performance should be adjudicated by a jury when the issue is disputed—but can be adjudicated as a matter of law when the issue is not contested. *See Lawler*, 269 S.W.3d at 596. The Texas Supreme Court held in *Lawler* that a party seeking specific performance does not satisfy the "ready, willing, and able" element by simply stating so in their pleadings. *Id.* at 600 ("A plaintiff's pleading that he *is* ready, willing, and able to perform at the time the lawsuit is filed says nothing about whether he *was* ready, willing, and able to perform at the time required by the contract."). *Lawler* controls in this case because the parties' stipulation required

_____

[3]Given our assumptions on the contract's existence and breach, we need not address the first two points of Great Western's argument.

Pathfinder to prove that it *was entitled to equitable relief* as a result of Great Western's breach. Pathfinder acknowledged this issue from the beginning when it told the jury, "all we have to demonstrate is that we were ready, willing, and able to move forward." In short, Pathfinder's burden was to prove that it was ready, willing, and able to perform on "the original date for performance under the contract," *17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 259 (Tex. App.—Dallas, 2002, pet. denied), *and* "at the time the defendant breached." *John Gannon, Inc. v. Gunnarson Outdoor Advertising, Inc.*, No. 03-08-00404-CV, 2010 WL 3192536, at *4 (Tex. App.—Austin Aug. 11, 2010, pet. denied) (mem. op.).

In order to succeed upon its request for specific performance of the June 1 letter, Pathfinder had an obligation to demonstrate its financial ability to pay the acquisition costs and drilling costs. Pathfinder sent a check in the amount of $9,968.98 to Great Western on October 29, 2004, approximately 39 days after Great Western's September 20 letter that detailed the actual costs of the lease bonus and brokerage expenses to date and indicated that Pathfinder's 25% share of those costs was $9,968.98. Drilling costs for the first well were nearly $800,000, and a 25% share of those costs would have been about $200,000 based on the initial Drilling Cost Estimate and the revised AFE.

The record reflects that Great Western sent a Drilling Cost estimate and AFE and a revised AFE for costs associated with the first well. Pathfinder signed the second AFE and returned it to Great Western. Ashford testified that, in 2004, as the Airfield wells in Latigo were being completed prior to development of Labors 1 and 10, he sold off part of his Latigo interest to "lighten up a little bit." Pathfinder presented evidence that the Airfield 2 well, which was its first offset well, produced 100 barrels of oil daily. However, Pathfinder did not provide any evidence of a line of credit, cash reserves, escrowed funds, or any other source of funds to show that it

was ready, willing, and able to perform the requirements of the proposed contract. Because Pathfinder did not conclusively prove that it was ready, willing, and able to pay the costs associated with the AFE, we hold that the trial court should have submitted a jury question on the issue and that it abused its discretion when it failed to do so.

### B. The trial court's error was harmful because it probably resulted in an improper judgment.

Great Western requests that this court reverse the trial court's judgment because the trial court failed to submit a jury question on an element of specific performance. A trial court must submit jury questions, instructions, and definitions that "are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278; *see Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663 (Tex. 1999). Rule 272 provides that all objections to the charge that are not so presented shall be considered as waived. *See* TEX. R. CIV. P. 272. Rule 279 provides that any issues excluded from the charge that are "not conclusively established under the evidence and no element of which is submitted or requested are waived." *See* TEX. R. CIV. P. 279. "If no element of an independent ground of recovery that is not conclusively established by the evidence is included in the charge without request or objection, the ground of recovery is waived." *Lawler*, 269 S.W.3d at 598.

In reviewing alleged error in a jury submission, we consider "the pleadings of the parties and the nature of the case, the evidence presented at trial, and the charge in its entirety." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009). The alleged charge error "will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Island Recreational Dev. Corp. v.*

11

*Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986); *see Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995). Pathfinder stipulated to an election of specific performance, which the trial court interpreted to only require proof of a contract with and a breach by Great Western. But the stipulation clearly outlined that, if Pathfinder proved those two items *and* proved that it was entitled to recover because of Great Western's breach, then its remedy was specific performance.

We have determined under the terms of the parties' stipulation that Pathfinder had to prove it was "ready, willing, and able" and that, because the evidence adduced at trial created a fact question, the trial court should have submitted a question to the jury on the issue. Because it probably resulted in an improper judgment, we cannot say that the trial court's error was harmless. *See Lawler*, 269 S.W.3d at 596. We sustain Great Western's second issue on appeal, and in light of that resolution, we need not address Great Western's first and third issues on appeal.

### C. Render is the proper remedy in this case.

The Texas Supreme Court has held that, as a general rule, the "Court of Civil Appeals" should not render judgment unless it appears that the case has been fully developed. *Lanford v. Smith*, 99 S.W.2d 593, 594 (Tex. 1936). When we reverse the judgment of a trial court, we must render the judgment that the trial court should have rendered except when a remand is necessary for further proceedings or when the interests of justice require a remand for another trial. TEX. R. APP. P. 43.3; *Fullwood v. Fullwood*, No. 11-01-00186-CV, 2001 WL 34376863, at *2 (Tex. App.—Eastland Dec. 20, 2001, no pet.) (not designated for publication). Where the case was fully developed and not tried on an erroneous theory, rendition is appropriate. *Tex. Consol. Theatres, Inc. v. Slaughter*, 143 S.W.2d 659, 663 (Tex. Civ. App.—Eastland 1940, writ dism'd); *see Lee C. Moore & Co. v. Jarecki Mfg. Co.*, 82 S.W.2d 1002, 1006 (Tex. Civ. App.—Eastland 1935, writ ref'd). Because

this case was fully developed and tried to a jury and because the meaning of the stipulation was argued at trial, including whether to include a jury question on the "ready, willing, and able to perform" element, this case is not one that should be remanded. Additionally, we note that the Texas Supreme Court in *Lawler* affirmed those parts of the court of appeals' judgment in which the court of appeals had (1) held that the "ready, willing, and able" finding could not be deemed in that case and (2) reversed the award of specific performance—without remanding that issue. *Lawler*, 269 S.W.3d at 603.

### III. *This Court's Ruling*

We reverse the judgment of the trial court and render judgment that Pathfinder take nothing.

MIKE WILLSON
JUSTICE

September 29, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.